# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MICHAEL HOLBROOK, MARPAT
Aviation, individually and as
lessee of SUD AVIATION – SNIAS
(Aerospatiale) Alouette II Model
SE-3130 Helicopter Serial Number
1133,

     *Plaintiff-Appellant,*

     v.        No. 10-2355

UNITED STATES OF AMERICA,

     *Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(2:10-cv-00374)

Argued: January 25, 2012

Decided: March 12, 2012

Before WILKINSON, NIEMEYER, and SHEDD,
Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the
opinion, in which Judge Niemeyer and Judge Shedd joined.

**COUNSEL**

**ARGUED:** Mary Schiavo, MOTLEY & RICE, LLP, Mt. Pleasant, South Carolina, for Appellant. Barbara B. O'Malley, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Tony West, Assistant Attorney General, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

The Federal Aviation Administration ("FAA") is responsible for regulating aircraft safety, and does so in part through its system of aircraft certification. This case arises from the FAA's decision to suspend the airworthiness certification of a helicopter leased by appellant Michael Holbrook for his flight instruction business. Holbrook brought suit against the United States under the Federal Tort Claims Act ("FTCA"), alleging that he suffered financial harm as a result of the FAA's negligence in first issuing an airworthiness certificate to the helicopter. The district court dismissed the complaint, finding that the FAA inspector's original certification of the aircraft fell under the discretionary function exception to the FTCA. We affirm.

I.

The present dispute has its origins in the technical area of the FAA's aircraft certification system. Congress has delegated broad authority to the FAA to "promote safe flight of civil aircraft in air commerce" by "prescribing minimum standards required in the interest of safety" for aircraft design and inspection. 49 U.S.C. § 44701(a). To that end, the FAA has

promulgated regulations that require a multistep certification process for aircraft models and individual aircraft. *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 804-07 (1984) (describing the stages of certification). As relevant here, before introducing a new type of aircraft, a manufacturer "must first obtain FAA approval of the plane's basic design in the form of a type certificate." *Id.* at 805; *see* 49 U.S.C. § 44704(a). Once produced, an individual aircraft must next receive an airworthiness certificate from the FAA before it may operate in air commerce. *See id.* § 44711(a). The FAA has authority to reinspect or reexamine a civil aircraft at any time and "may issue an order amending, modifying, suspending, or revoking" a certificate in the interest of the public and air safety. *Id.* § 44709(a)-(b).

The type certification process places significant responsibility on the aircraft manufacturer, which must test and analyze new aircraft designs itself. *See, e.g.*, 14 C.F.R. §§ 21.33, 21.35. The manufacturer must then submit design documentation, test reports, and engineering computations to demonstrate that the aircraft satisfies the applicable FAA regulations. *See id.* § 21.21. The FAA may issue a type certificate once it has reviewed the manufacturer's submitted materials for compliance with FAA regulations and concluded that the proposed design meets minimum safety standards. *See* 49 U.S.C. § 44704(a).

The relevant aircraft in this case is an Alouette Model II SE-3130 Helicopter, Serial Number 1133, Registration N31330 ("the helicopter"), which was manufactured in France in 1958. FAA regulation provides an abbreviated type certification process for aircraft, such as the subject helicopter, manufactured in certain foreign countries. *See* 14 C.F.R. § 21.29. Under § 21.29, if the FAA has a bilateral agreement with the country of origin, the FAA may rely on the foreign country's certification that the aircraft has been examined, tested, and determined to meet the applicable safety requirements. *Id.* The subject helicopter was type certificated in 1958

in accordance with § 21.29 and issued a No 7H1 type certificate data sheet.

In 2000, the helicopter was imported into the United States and the owner applied for an airworthiness certificate ("AC"), which the FAA may issue "when the Administrator finds that the aircraft conforms to its type certificate and, after inspection, is in condition for safe operation." 49 U.S.C. § 44704(d). The FAA has promulgated procedural requirements for the issuance of ACs. *See* 14 C.F.R. §§ 21.171-21.199. At the time the helicopter was issued an AC in 2001, 14 C.F.R. § 21.183 had four subsections which provided procedures governing the issuance of a standard AC for aircrafts of different type or origin. *Id.* § 21.183 (2001). Section 21.183(c), entitled "Import aircraft," provided that:

> An applicant for a standard airworthiness certificate for an import aircraft type certificated in accordance with § 21.29 is entitled to an airworthiness certificate if the country in which the aircraft was manufactured certifies, and the Administrator finds, that the aircraft conforms to the type design and is in condition for safe operation.

14 C.F.R. § 21.183(c) (2001). Subsection (d) of § 21.183, entitled "Other aircraft," prescribed certification requirements for aircraft "not covered by paragraphs (a) through (c) of this section." *Id.* § 21.183(d) (2001).\* In addition, FAA Order 8130.2D, which "establishes procedures for accomplishing original and recurrent airworthiness certification of aircraft," provided additional guidance to FAA employees for the issuance of ACs. *See* Aviation Admin., Order 8130.2D, Airworthiness Certification of Aircraft and Related Products (1999).

---

\*In 2006, the FAA amended subsection (d) to explicitly apply to "used aircraft and surplus aircraft of the U.S. Armed Forces." 14 C.F.R. § 21.183(d) (2006).

The AC application for the subject helicopter indicated that the aircraft was imported and included an "Attestation" from the French Civil Aviation Authority, which stated that the helicopter "was manufactured by Sud Aviation on 1958 under the surveillance of the French military Authority." The Attestation explained, however, that "we have not inspected ourselves this helicopter[ ] but we can certify that its design was compliant with . . . FAA type certificate no 7H1." FAA safety inspector Ralph Chadburn evaluated the AC application under 14 C.F.R. § 21.183(c). After consulting with his superiors, he determined that the Attestation satisfied the foreign certification requirement and issued an AC for the helicopter in 2001. He later explained that he reviewed "the aircraft's maintenance and operational records, its inspection history and its certification history" and that he "relied on applicable statutes, regulations and FAA guidance, including FAA Order 8130.2D."

MARPAT Aviation, LLC, Holbrook's helicopter flight instruction business, leased the certificated helicopter from its present owner, Mike's Contracting, LLC in 2004. In late 2006, the FAA initiated a review of all Alouette helicopters, including the helicopter leased by MARPAT, due to concern that the helicopters, originally designed for use by the military, were not intended for civil certification. The FAA reexamined the Attestation submitted with the helicopter's AC application and deemed it insufficient to establish eligibility for certification. On August 14, 2007, Holbrook received an Emergency Order of Suspension from the FAA. The order suspended the AC of the helicopter, preventing the aircraft's use by MARPAT.

Holbrook brought suit against the United States under the FTCA, alleging that the FAA inspector erroneously issued an AC to the subject helicopter by misapplying mandatory FAA regulations, which caused him financial harm when the AC was suspended. The district court granted the United States' motion to dismiss the complaint under Rule 12(b)(1) for lack

of subject matter jurisdiction, finding that the inspector's decision to issue an AC was an exercise of discretion excepted from the FTCA's limited waiver of governmental immunity. *Holbrook v. United States*, 749 F. Supp. 2d 446 (S.D. W. Va. 2010). This appeal followed and we review the district court's dismissal of the complaint *de novo*. *See Indemnity Ins. Co. v. United States*, 569 F.3d 175, 179 (4th Cir. 2009).

## II.

### A.

The statutory framework of this case is well settled and we shall review it only briefly. The Federal Tort Claims Act waives the sovereign immunity of the United States with respect to civil actions in federal court for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). Where immunity is waived, the government may be held liable in tort "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674. But the FTCA's grant of federal jurisdiction is qualified by a number of exceptions. *See id.* § 2680. As relevant here, the waiver of immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* § 2680(a). Where this discretionary function exception applies, the courts lack federal subject matter jurisdiction. *See Williams v. United States*, 50 F.3d 299, 304-05 (4th Cir. 1995).

The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."

*Varig Airlines*, 467 U.S. at 808. It protects the government "from being hobbled in the discharge of its policy-driven duties by tort suits," *Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993), and from "liability that would seriously handicap efficient government operations." *Varig Airlines*, 467 U.S. at 814 (quoting *United States v. Muniz*, 374 U.S. 150, 163 (1963)). And the exception preserves separation of powers by "prevent[ing] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.*; *see Tiffany v. United States*, 931 F.2d 271, 276 (4th Cir. 1991).

B.

To determine whether the exception applies, we consider whether the government action at issue "involves an element of judgment or choice" that is "based on considerations of public policy." *Berkovitz v. United States*, 486 U.S. 531, 536-37 (1988). A government employee's conduct does not involve discretion where a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" and "the employee has no rightful option but to adhere to the directive." *Id.* at 536. Where, however, a regulation authorizes or requires employee discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *United States v. Gaubert*, 499 U.S. 315, 324 (1991).

III.

As an initial matter, we observe that the FAA's establishment of procedures to govern the certification process is plainly a protected exercise of discretion. As the Supreme Court explained in *Varig Airlines*: "When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind." 467 U.S. at 819-

20. This is true of the FAA, which "Congress specifically empowered . . . to establish and implement a mechanism for enforcing compliance with minimum safety standards according to [its] 'judgment of the best course.'" *Varig Airlines*, 467 U.S. at 816 (quoting *Dalehite v. United States*, 346 U.S. 15, 34 (1953)). Congress' broad delegation of discretion to the FAA recognized that an agency equipped with specialized knowledge would be best able to stay abreast of accelerating change in a technical and hazardous area and to update minimum air safety standards accordingly.

The FAA has translated its mandate into procedures for aircraft certification, balancing such policy considerations as "the goal of air transportation safety and the reality of finite agency resources." *Id.* at 820. The result is a process where "the applicant itself [is] responsible for conducting all inspections and tests necessary to determine that the aircraft comports with FAA airworthiness requirements." *Id.* at 805. Under both the type and airworthiness certification processes, the FAA has elected to "police the conduct of private individuals by monitoring their compliance with FAA regulations." *Id.* at 815; *see Waymire v. United States*, 629 F. Supp. 1396, 1400 (D. Kan. 1986) ("[T]here is no basis to distinguish between the FAA's role when issuing type certificates and airworthiness certificates.").

Although Holbrook does not take issue with the regulatory scheme implemented by the FAA, he alleges that FAA inspector Chadburn acted outside the bounds of discretion by applying the wrong regulatory requirements to grant an AC to the subject helicopter. First, he asserts that Chadburn mistakenly evaluated the used imported helicopter's AC application under 14 C.F.R. § 21.183(c), rather than § 21.183(d). Second, he contends that even if Chadburn properly selected § 21.183(c), he erroneously applied its criteria to grant the AC. We shall address each argument in turn.

IV.

Inspector Chadburn's decision to certify the imported helicopter under 14 C.F.R. § 21.183(c), rather than paragraph (d), did not violate a regulatory mandate. As the district court found, "the plain language of § 21.183 indicates that Chadburn properly assessed the airworthiness of the Alouette Helicopter under paragraph (c)." *Holbrook*, 749 F. Supp. 2d at 453. Paragraph (c) provided guidelines for the issuance of "an import aircraft type certificated in accordance with § 21.29," 14 C.F.R. § 21.183(c) (2001), and the subject helicopter was manufactured in France, type certificated under 14 C.F.R. § 21.29, and imported to the United States before application for an AC. Nothing in the language of (d), which prescribed certification procedures for "other" aircraft "not covered by paragraphs (a) through (c) of this section," suggests otherwise. *Id.* § 21.183(d) (2001). As the Supreme Court emphasized in *Gaubert*, "if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation." 499 U.S. at 324.

Holbrook nonetheless asserts that the guidance provided in FAA Order 8130.2D establishes that Chadburn was required to review an AC for a *used* imported aircraft, such as the subject helicopter, under § 21.183(d). Specifically, he points to ¶60a of the Order, which states, "Under § 21.183(d), an applicant is entitled to a standard airworthiness certificate for aircraft that are . . . used (to include § 21.29 aircraft)." FAA Order 8130.2D ¶60a. According to Holbrook, ¶60a thus establishes that § 21.183(c) governs only the issuance of ACs for new imported aircraft.

It is undisputed that the subject helicopter was a used aircraft. But Holbrook's selective reliance on the Order overlooks the fact that its guidance is conflicting at best. Paragraph 208 of the Order, in Chapter 6 entitled "Import Pro-

cedures," "provides guidance and procedures relating to U.S. airworthiness certification and approval of imported products." FAA Order 8130.2D ¶208. It states that § 21.183(c), and not (d), is appropriately applied to aircraft type certificated under § 21.29:

> Section 21.183(c) is the basis for issuing a U.S. standard airworthiness certificate for imported aircraft which have been type certificated by the FAA under the provisions of § 21.29. The regulatory basis for issuance of U.S. standard airworthiness certificates to all other aircraft imported into the United States is § 21.183(d). An example is an aircraft type certificated under the provisions of § 21.21 . . . .

FAA Order 8130.2D ¶208e(1)(a). Because both the regulation and ¶208e of the Order suggest that the subject helicopter should be evaluated under § 21.183(c), Chadburn reasonably adjudged that paragraph (d) was inapplicable. If anything, the Order's overlapping instructions with respect to § 21.183(c) and § 21.183(d) expanded, rather than contracted, the discretion Chadburn possessed in choosing between them.

What is more, the Order's internal guidance to FAA employees is insufficient to establish a mandatory requirement such that the exercise of discretion was removed from the task at hand. If select passages from a lengthy and complex order could serve as the basis for government tort liability, the FAA would be hobbled by the specter of litigation as it worked to promote aircraft safety. The price of circulating internal guidance should not be an exponential increase in exposure to a tort suit. In *Tiffany*, we rejected the idea that "Air Force regulation that designates internal operating procedures automatically gives rise to an actionable duty in tort to comply with them." 931 F.2d at 279. We recognized that an agency "might well respond by setting fewer procedures and regulations if each could give rise to civilian tort suits," resulting "in increased confusion and a loss of . . . efficiency." *Id.*

at 281; *see also Indemnity Ins. Co.*, 569 F.3d at 181 (holding that the discretionary function exception applied where the procedures in a Marine Safety Manual were "only recommended," not "mandatory").

Plaintiff's construction of FAA Order 8130.2D would elevate rigidity over flexibility in FAA operations. It would further involve courts in the detailed supervision of FAA certifications, all to the detriment of the congressional delegation of discretion to the agency. *See* 49 U.S.C. § 44701(a). FTCA liability would especially "handicap efficient government operations" here, *Varig Airlines*, 467 U.S. at 814, because Holbrook seeks to raise "recommended guidelines above the FAA's unambiguous, mandatory regulations," *Holbrook*, 749 F. Supp. 2d at 454. To interpret the Order as creating a legal obligation to apply § 21.183(d) would therefore reorder agency directives, transforming the subordinate into the superior. Whatever murkiness exists in the FAA Order is hardly sufficient to deprive Chadburn of the protection accorded the judgmental exercise of evaluating this helicopter's airworthiness certification application.

V.

Holbrook next contends that even if it were within Chadburn's discretion to apply 14 C.F.R. § 21.183(c), Chadburn erroneously applied its criteria to issue an AC. Section 44704(d) of Title 49 directs that "[t]he Administrator shall issue an airworthiness certificate when the Administrator finds that the aircraft conforms to its type certificate and, after inspection, is in condition for safe operation." 49 U.S.C. § 44704(d). With respect to imported aircraft, § 21.183(c) required that an aircraft's AC application include a certification from the country of manufacture that the "aircraft conforms to the type design and is in condition for safe operation." 14 C.F.R. § 21.183(c) (2001).

A.

Holbrook argues that Chadburn lacked discretion to issue the AC in reliance on the Attestation issued by the French Civil Aviation Authority, which certified that the helicopter "was manufactured by Sud Aviation on 1958 under the surveillance of the French military Authority" and "that its design was compliant with . . . FAA type certificate no 7H1." He insists that 49 U.S.C. § 44704(d)'s mandate eliminates judgment or choice from the airworthiness certification process and that Chadburn acted outside its prescribed course of conduct in relying on the Attestation as opposed to an Export Certificate of Airworthiness.

Chadburn's conduct, however, is again protected by the discretionary function exception—his determination to grant an AC did indeed involve "an element of judgment or choice" that was "based on considerations of public policy." *Berkovitz*, 486 U.S. at 536-37. In fact, the very particularized way in which Holbrook seeks to have Chadburn go about his job would eviscerate the discretion conferred by Congress upon the FAA in devising the best means of "promot[ing] safe flight of civil aircraft in air commerce." 49 U.S.C. § 44701(a).

The general language in 49 U.S.C. § 44704(d) simply "cannot be interpreted as removing all safety-related decisions from the discretion of the agency administering [a] project." *Baum*, 986 F.2d at 722. In *Baum*, the plaintiff argued that the congressional mandate to build a Baltimore-Washington parkway "to provide a protected, safe, and suitable approach for passenger-vehicle traffic" removed the National Park Service's discretion in constructing guardrails for the parkway. We disagreed, concluding that "very general, sweeping language is insufficient to remove questions of design and construction . . . from the discretion of the National Park Service." *Id.*; *see also Tippett v. United States*, 108 F.3d 1194, 1197 (10th Cir. 1997) (holding that a management policy of the National Park Service that "[t]he saving of human life will

take precedence over all other management actions" was "too general to remove the discretion" from the park ranger's conduct).

So too here, "[t]he existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion." *Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998). It is clear that the general language used by Congress to express broad air safety purposes involves significant discretionary elements. The statute identifies regulatory goals but relies on the FAA to provide criteria for assessing an aircraft's safety and to specify the appropriate method of aircraft inspection. Although the FAA is statutorily required to determine that the aircraft conforms to its type certificate before issuing an AC, Congress entrusted the FAA to develop a system of review and to make its own findings. And the FAA's airworthiness certification process reserves discretion for its inspectors to ensure compliance with aviation safety requirements. For example, § 21.183(c) did not specify particular language that a foreign certification document must contain to establish that the aircraft conforms to its type certificate.

Therefore, contrary to Holbrook's insistence, Chadburn was not required to deny an AC because the helicopter's application included only an Attestation from the French Civil Aviation Authority, and not an Export Certificate of Airworthiness. Whereas an Export Certificate of Airworthiness certifies that an aircraft has been inspected by the foreign Civil Aviation Authority, a certification statement such as the Attestation verifies that the aircraft conformed to a U.S. type certificate at the time of manufacture.

Section 21.183(c) does not condition an AC on the submission of an Export Certificate of Airworthiness. Paragraph 40c of Order 8130.2D stresses that an AC applicant may instead submit "a certification statement [from a foreign Civil Aviation Authority] that the aircraft meets its FAA-approved type

design and is in a condition for safe operation." FAA Order 8130.2D ¶40c. Paragraph 213 of the Order similarly highlights that an Export Certificate of Airworthiness is only one example of an acceptable foreign certification document. It provides that in determining that an aircraft is in condition for safe operation pursuant to 49 U.S.C. § 44704(d), the "FAA may base its findings, wholly or partially, on the export certification document (e.g., an Export Certificate of Airworthiness) issued by the Civil Aviation Authority of another country." FAA Order 8130.2D ¶213a.

In this case, Chadburn relied on the Attestation, the helicopter's records, and the fact that the helicopter had recently undergone a comprehensive maintenance inspection, to conclude that the aircraft was safe for operation. Even when the FAA issued a notice to stop the "improper issuance" of standard ACs to Alouette helicopters, it did not condemn prior reliance on, nor forbid future consideration of, Attestation documents. Aviation Admin., Notice No 8300.124, Certification of Sud (Eurocopter) Alouette Helicopters (2006). If anything, the FAA notice confirmed that it was within the FAA inspector's discretion to evaluate the relevance of an Attestation, stating: "The aircraft may be accompanied by an 'ATTESTATION' document that may appear to be equivalent to an Export Certificate of Airworthiness or used as a 'certifying statement' in meeting the regulations. These documents must be reviewed to determine[ ] their true intent and usefulness in the certification process." *Id.* It is clear, therefore, that the FAA did not "specifically prescribe[ ] a course of action" that Chadburn failed "to follow," when he chose to credit the Attestation for purposes of § 21.183(c). *Berkovitz*, 486 U.S. at 536.

B.

Holbrook argues, however, that the FAA's decision to suspend the helicopter's AC illustrates that Chadburn lacked discretion to conclude that the helicopter conformed to its type

certificate in the first place. This argument mistakes a subsequent allegation of error for a prior lack of discretion. But the discretionary function exception applies "even if the discretion has been exercised erroneously" and is alleged "to frustrate the relevant [regulatory] policy." *Gaubert*, 499 U.S. at 338 (Scalia, J., concurring in part and concurring in the judgment); *see* 28 U.S.C. § 2680(a) (the discretionary function exception applies "whether or not the discretion involved be abused"); *see also Indemnity Ins. Co.*, 569 F.3d at 181 (concluding that it is "of no moment in our analysis" that the government employee characterized his action "as a mistake").

The inquiry is thus whether the discretion exists, not whether in later litigation it is alleged to have been abused. Were it otherwise, Congress' intent to shield an agency's discretionary decisions from FTCA lawsuits would be set at naught. For purposes of the discretionary function exception, we thus do not inquire into "the agent's subjective intent in exercising the discretion conferred by statute or regulation," but instead consider whether the "nature of the actions taken" were "susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.

As we have emphasized repeatedly, FAA certification procedures authorize aircraft inspectors to make discretionary policy decisions. In *Varig Airlines*, the Supreme Court held "that the acts of FAA employees in executing [the chosen method of type certification] in accordance with agency directives are protected by the discretionary function exception." 467 U.S. at 820. The employees "were specifically empowered to make policy judgments" and weigh such considerations as "the need to maximize compliance with FAA regulations, and the efficient allocation of agency resources." *Id.* The airworthiness certification process is indistinguishable from the type certification process in this regard. *See Roundtree v. United States*, 40 F.3d 1036, 1039 (9th Cir. 1994) ("[T]aking certificate action as a method of assuring that the federal aviation regulations will be followed 'is an

inherently policy-oriented decision that requires consideration of social and economic policies.'").

In addition, where "established governmental policy . . . allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. In a technical area such as aviation regulation, this presumption prevents judges from imposing "a strata of tort law which would be both capricious and confining in its impact." *Tiffany*, 931 F.2d at 279. Holbrook has given us no reason to doubt that the conduct at issue was grounded in policy considerations. FAA inspectors are conversant with aircraft maintenance and operational records, aircraft inspection and certification history, and complex FAA regulatory requirements. Chadburn testified that he drew on this range of proficiency to determine that the aircraft was safe to fly. We are ill-equipped to revisit under the FTCA policy decisions committed by Congress to those with greater expertise than courts or to direct the appropriate exercise of executive policymaking in this sensitive area. This case thus fits squarely within *Varig Airlines*'s admonition against "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig Airlines*, 467 U.S. at 814.

## VI.

Holbrook's complaint threatens to interfere with agency discretion in yet another respect. His incentive to litigate against the government resulted not from the allegedly negligent certification of the aircraft, but from the adverse economic consequences of the subsequent suspension of the AC. Congress, however, has afforded the FAA broad discretion to modify its certification decisions. Under 49 U.S.C. § 44709, the FAA has authority to reinspect or reexamine a civil aircraft at any time and "may issue an order amending, modifying, suspending, or revoking" a certificate in the interest of air

safety. 49 U.S.C. § 44709(a)-(b). If revocation of a previously issued certificate exposed the FAA to a negligent certification suit, the FAA would be reluctant to exercise its revocation authority for fear of civil litigation. From the standpoint of air safety, few things could be worse.

The Ninth Circuit has ruled that the FAA's initial issuance of supplemental type certificates was protected by the discretionary function exception, despite a subsequent airworthiness directive stating that the certificates were approved in error. The court recognized that subjecting the FAA to liability would "lead to absurd results." *Gatx/Airlog Co. v. United States*, 286 F.3d 1168, 1179 (9th Cir. 2002). Namely, "[a]lthough the FAA is charged with overseeing air safety, it would be paralyzed by the prospect that it could be held liable for making safety judgments in the approval process as a result of modifying its prior certifications." *Id.* In sum, "the notion that the FAA could in essence be held liable for a policy judgment that would save lives is antithetical to the discretionary function exception." *Id.*

For that reason, the FAA must be free to engage in certification error-correction without the threat of an FTCA suit. Minimum aircraft safety standards evolve as technology advances and knowledge accumulates. It is essential that the FAA have the flexibility to adapt its certification decisions to changed conditions and to designate an aircraft unsafe to fly in light of new data. Because aircraft safety is not a static concept, and aviation is a highly regulated field, aircraft manufacturers and owners are on notice that the FAA's certification authority creates a degree of economic risk that they must bear. In *Varig Airlines*, the Supreme Court recognized that the FTCA is an inappropriate vehicle to compensate for adverse economic regulatory effects arising from FAA certification. 467 U.S. 797. To bind the FAA to its original certification decisions through tort law's deterrent power would contravene Congress' delegation of broad authority in this area to the FAA, crimp the FAA's leeway for reexamination afforded

by 49 U.S.C. § 44709, and thereby constrain the Administrator's ability to protect the lives of pilots, attendants, and passengers in the air.

## VII.

In view of the fact that the discretionary function exception requires the dismissal of plaintiff's action, we need not reach the government's contention that the misrepresentation exception to the FTCA applies as well.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.