**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 14-2391

JONATAN PORNOMO, Administrator of the Estate of Sie Giok
Giang, Deceased,

Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.    James R. Spencer, Senior
District Judge.  (3:14-cv-00307-JRS)

Argued:  December 8, 2015              Decided:  February 25, 2016

Before AGEE and HARRIS, Circuit Judges, and Theodore D. CHUANG,
United States District Judge for the District of Maryland,
sitting by designation.

Affirmed by published opinion.  Judge Chuang wrote the opinion,
in which Judge Agee and Judge Harris joined.

**ARGUED**: Philip L. Bradfield, THE BRADFIELD INJURY LAW FIRM, PLC,
Newport News, Virginia, for Appellant.   Megan Barbero, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.
**ON BRIEF**: Benjamin C. Mizer, Principal Deputy Assistant Attorney
General, Mark B. Stern, Appellate Staff, Civil Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Dana J. Boente,
United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Richmond, Virginia; Paul M. Geier, Assistant General Counsel for

Litigation, Paula Lee, Trial Attorney, Abel L. Smith, III, Assistant Chief Counsel, FMCSA General Law Division, Sabrina E. Redd, Attorney Advisor, FMCSA General Law Division, Federal Motor Carrier Safety Administration, UNITED STATES DEPARTMENT OF TRANSPORTATION, Washington, D.C., for Appellee.

------------

CHUANG, District Judge:

On May 31, 2011, Sie Giok Giang, a passenger on a Sky Express interstate bus traveling from North Carolina to New York, was killed when the driver fell asleep at the wheel and ran the bus off the side of a Virginia highway. About seven weeks before the crash, Sky Express had been given an "unsatisfactory" safety rating by the Federal Motor Carrier Safety Administration ("FMCSA"), a rating that ordinarily would require a passenger motor carrier to cease operations after 45 days. The fatal crash occurred after that 45-day period, but during an extension period granted by the FMCSA that allowed Sky Express to remain on the road for an additional 10 days. At issue is whether the discretionary function exception to the Federal Tort Claims Act ("FTCA") bars an FTCA claim against the FMCSA for allowing Sky Express to continue to operate during those 10 days. The district court concluded that, pursuant to that exception, it lacked subject matter jurisdiction and dismissed the case. We affirm.

I.

A.

The present dispute stems from the operation of the federal regulatory scheme for monitoring the safe operation of interstate passenger motor carriers. Congress has charged the Secretary of Transportation ("the Secretary") to "determine

3

whether an owner or operator is fit to operate safely commercial motor vehicles." 49 U.S.C. § 31144(a)(1) (2012). In turn, the Secretary has delegated this authority to the FMCSA. 49 C.F.R. § 1.87(f) (2015). To carry out this mandate, the FMCSA has promulgated regulations that provide for compliance reviews of commercial motor carriers to ensure their safe operation. 49 C.F.R. §§ 385.3, 385.9. Based on a compliance review, a commercial motor carrier is given a safety rating of "satisfactory," "conditional," or "unsatisfactory." Id. § 385.3. A "satisfactory" rating means that the motor carrier has adequate safety management controls in place. Id. A "conditional" rating means that the motor carrier does not have adequate safety management controls in place and that the lack of those controls "could result" in safety violations. Id. An "unsatisfactory" rating means that the motor carrier "does not have adequate safety management controls in place" and that the lack of safety management controls "has resulted" in safety violations. Id.; see 49 C.F.R. § 385.5 (delineating salient safety violations).

If a commercial motor carrier receives an "unsatisfactory" rating, it does not have to cease operation immediately. Instead, for passenger carriers, an "unsatisfactory" rating becomes final "beginning on the 46th day after the date of the FMCSA notice of proposed 'unsatisfactory' rating," 49 C.F.R.

4

§ 385.13(a)(1), at which point the carrier may not operate until the owner or operator is found to be "fit," 49 U.S.C. § 31144(c)(2). The carrier may seek an upgrade of its rating by submitting to the FMCSA a written description of corrective actions it has taken and documentation of those changes. 49 C.F.R. § 385.17(a)-(c). A request for an upgrade does not toll the 45-day provisional period. However, in 2011, when the events at issue in this case occurred, the regulations provided that "[i]f the motor carrier has submitted evidence that corrective actions have been taken . . . and the FMCSA cannot make a final determination within the 45-day period, the period before the proposed safety rating becomes final may be extended for up to 10 days at the discretion of the FMCSA." 49 C.F.R. § 385.17(f)(2011).

In 2012, the FMCSA rescinded this 10-day extension provision to make the regulations "consistent with the policy and the statutory language" of 49 U.S.C. § 31144(c)(2) and (4). 77 Fed. Reg. 64,759, 64,759 (Oct. 23, 2012). 49 U.S.C. § 31144(c)(2) states that "[w]ith regard to owners or operators of commercial motor vehicles designed or used to transport passengers, an owner or operator who the Secretary determines is not fit may not operate in interstate commerce beginning on the 46th day after the date of such fitness determination and until the Secretary determines such owner or operator is fit." The

5

statute provides the Secretary with discretion to extend operations for some carriers "for an additional 60 days," but expressly excludes passenger carriers from that provision. 49 U.S.C. § 31144(c)(4).

In 2011, Sky Express, Inc., a commercial motor carrier based in Charlotte, North Carolina, operated buses engaged in interstate passenger transportation. On April 7, 2011, the FMCSA conducted a safety compliance review of Sky Express and gave the carrier an "unsatisfactory" rating. On April 12, 2011, the FMCSA sent Sky Express written notice of that rating, explaining that the rating would become final in 45 days, on May 28, 2011, unless Sky Express took "the necessary steps to improve the rating to conditional or satisfactory." J.A. 35. On May 11, 2011, Sky Express submitted a Request for Change to Proposed Safety Rating in which it detailed efforts it had taken to resolve the safety issues identified in the April 7, 2011 compliance review.

After reviewing Sky Express's submission, the FMCSA concluded on May 12, 2011 that Sky Express had failed to provide adequate evidence that it had corrected all of the safety violations and thus decided to conduct a follow-up compliance review. In a May 13, 2011 letter from FMCSA Field Administrator Darrell Ruban to Sky Express, the FMCSA informed Sky Express

6

that it was "denying" Sky Express's request for a change in its rating because the submitted materials did not "provide sufficient evidence that the violations cited in the compliance review have been corrected." J.A. 52. The letter then notified Sky Express that the FMCSA would conduct a follow-up compliance review before June 7, 2011, during which Sky Express would need to provide additional documentation for review by safety investigators. In a second letter sent that same day, the FMCSA informed Sky Express that in order to provide additional time to conduct the follow-up compliance review, the deadline for Sky Express's "unsatisfactory" rating to become final had been extended by 10 days, from May 28, 2011 to June 7, 2011.

During that 10-day extension period, on May 31, 2011 at approximately 4:45 a.m., a Sky Express bus traveling northbound on Interstate 95 crashed in Caroline County, Virginia after the driver fell asleep at the wheel and allowed the bus to go off the road and down an embankment. The bus flipped over and rolled upside down, and Sie Giok Giang, a passenger, suffocated to death when her head became trapped between the collapsed bus roof and the top of her seat.

### C.

On April 28, 2014, Appellant Jonatan Pornomo, Giang's adult son and the administrator of Giang's estate, filed a wrongful death action against the United States pursuant to the Federal

7

Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (2012), in the United States District Court for the Eastern District of Virginia, Richmond Division. Pornomo alleged that the FMCSA had been negligent in issuing the 10-day extension because the language of 49 U.S.C. § 31144(c) does not permit any extension of the 45-day deadline, such that the regulation authorizing such an extension, 49 C.F.R. § 385.17(f), was invalid. Pornomo further contended that even if the FMCSA had the authority to issue an extension under 49 C.F.R. § 385.17(f), the criteria for issuance of such an extension had not been met.

The United States filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, arguing that the district court did not have jurisdiction over Pornomo's claim because the issuance of the 10-day extension was a discretionary act shielded from suit under the discretionary function exception to the FTCA, and because Pornomo's claim that the FMCSA lacked statutory authority to promulgate and apply 49 C.F.R. § 385.17(f) was a challenge to the validity of the regulation that, under 28 U.S.C. § 2342(3)(A), could be raised only in the court of appeals. The Government also argued that subject matter jurisdiction was lacking because the conduct at issue here did not constitute a tort under Virginia law.

The district court granted the Motion, holding that the discretionary function exception applied to the decision to

8

issue the 10-day extension and that the United States therefore had not waived sovereign immunity for this suit. The court found that the plain language of 49 C.F.R. § 385.17(f) afforded the agency discretion to grant an extension. The decision was "still a discretionary decision" even though the regulation provided two preconditions, because those preconditions were "not detailed" or a "safety check list," but instead required the application of FMCSA's "expertise" to determine whether they had been met. J.A. 14-15. The court then concluded that the "FMCSA received a detailed, written corrective action plan from Sky Express but determined, using its judgment, that it needed more information to verify the contents of the plan." Id. at 15. It further found that the "FMCSA determined it was unable to make a final determination concerning Sky Express' operating authority registration and therefore granted the extension to provide additional time to conduct a follow-up compliance review." Id. The district court thus dismissed the case for lack of subject matter jurisdiction. The district court did not directly address Pornomo's argument that 49 C.F.R. § 385.17(f) was invalid because the enabling statute does not permit any extensions for passenger carriers. It also did not address the Government's argument that the FMCSA's conduct did not constitute a tort under Virginia law.

Pornomo appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

Pornomo first claims that the district court erred in dismissing the Complaint because the facts related to subject matter jurisdiction are intertwined with the facts central to the merits of his claim. Because Pornomo did not make this argument below, it is waived. Robinson v. Equifax Information Services, LLC, 560 F.3d 235, 242 (4th Cir. 2009) ("Absent exceptional circumstances . . . we do not consider issues raised for the first time on appeal.") (quoting Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 603 (4th Cir. 2004)); Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993) ("As this court has repeatedly held, issues raised for the first time on appeal generally will not be considered.").

Pornomo also contends that the district court erred in (1) finding that the issuance of the 10-day extension was a discretionary act, such that the court lacked subject matter jurisdiction pursuant to the discretionary function exception to the FTCA; and (2) failing to find that 49 C.F.R. § 385.17(f) (2011) was invalid because its provision authorizing a 10-day extension exceeded the agency's statutory authority. We address these arguments in turn.

10

A.

The district court dismissed Pornomo's complaint for lack of subject matter jurisdiction because it found that the United States had not waived sovereign immunity. See Medina v. United States, 259 F.3d 220, 223-24 (4th Cir. 2001) ("[T]he Government's potential immunity from suit affects our jurisdiction[.]"). We review a district court's dismissal for lack of subject matter jurisdiction de novo. Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006). In determining whether subject matter jurisdiction exists, the reviewing court is not limited to the grounds relied on by the district court, but rather "may affirm on any grounds apparent from the record." Id.

B.

"As a sovereign, the United States is immune from all suits against it absent an express waiver of its immunity." Welch, Jr. v. United States, 409 F.3d 646, 650 (4th Cir. 2005) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)). Because the default position is that the federal government is immune to suit, any waiver of that immunity "must be 'strictly construed . . . in favor of the sovereign.'" Id. at 650-51 (quoting Lane v. Pena, 518 U.S. 187, 192 (1996)) (ellipses in original).

Pornomo's tort claims are brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. The FTCA does not

11

create a new cause of action; rather, it permits the United States to be held liable in tort by providing a limited waiver of sovereign immunity "for injury or loss caused by the negligent or wrongful act of a Government employee acting within the scope of his or her employment." Medina, 259 F.3d at 223. The FTCA renders the United States liable for such tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.

The FTCA contains several exceptions to its waiver of immunity. In particular, the FTCA's waiver of sovereign immunity does not extend to any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

To determine whether this discretionary function exception applies, courts apply a two-part test. The first step is to decide whether the conduct at issue involves "an element of judgment or choice" by the employee, rather than, for example, "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz v. United States, 486 U.S. 531, 536 (1988). The second step is to determine whether that judgment "is of the kind that the discretionary function exception was designed to

12

shield" in that the judgment relates to a governmental action or decision "based on considerations of public policy."  Id. at 536-37; see Suter, 441 F.3d at 310-11.

If an action is discretionary within the meaning of the exception, the exception applies "whether or not the discretion involved be abused."  28 U.S.C. § 2680(a); United States v. Gaubert, 499 U.S. 315, 323 (1991) (noting that discretionary actions are "protected, even if those particular actions were negligent").  It applies "even if the discretion has been exercised erroneously" and is deemed to have frustrated the relevant policy purpose.  Holbrook v. United States, 673 F.3d 341, 350 (4th Cir. 2012).  "The inquiry is thus whether the discretion exists, not whether in later litigation it is alleged to have been abused.  Were it otherwise, Congress' intent to shield an agency's discretionary decisions from FTCA lawsuits would be set at naught."  Id.

### III.

"[W]hatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals."  United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 813-14 (1984).  As discussed below, because the FMCSA's decision to grant the 10-day extension pursuant to an existing regulation

13

involved an "element of judgment or choice" and was "based on considerations of public policy," the discretionary function exception applies. Berkovitz, 486 U.S. at 536–37.

Pornomo does not dispute that the matter at issue, government regulators' safety determinations for commercial motor vehicles, involves considerations of public policy. See United States v. Gaubert, 499 U.S. 323, 324 (1991) (stating that if a regulation "allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion"). Thus, the applicability of the discretionary function exception turns on the first prong: whether the conduct at issue involves an element of judgment or choice.

The 10-day extension was issued pursuant to a regulation that states,

> If the motor carrier has submitted evidence that corrective actions have been taken pursuant to this section and the FMCSA cannot make a final determination with the 45-day period, the period before the proposed safety rating becomes final may be extended for up to 10 days at the discretion of the FMCSA.

49 C.F.R. § 385.17(f) (2011) (emphasis added). On the face of the regulation, therefore, the act of granting an extension requires an exercise of judgment or choice by the FMCSA. The regulation thus differs markedly from the mandatory provisions at issue in the cases cited by Pornomo in which regulatory

14

action was deemed nondiscretionary. See Berkovitz, 486 U.S. at 543-44 (finding that the discretionary function exception did not bar an FTCA claim against a federal agency for licensing polio vaccine without first receiving mandatory safety data and determining compliance with safety standards); In re: Sabin Oral Polio Vaccine Prods. Liab. Litig., 984 F.2d 124, 127 (4th Cir. 1993) (finding that release of a vaccine upon meeting mandatory safety requirements was a nondiscretionary function).

Pornomo nevertheless argues that the discretionary function exception does not bar his claim because § 385.17(f) gives the FMCSA discretion to grant a 10-day extension only if and when two conditions have been met: (1) the motor carrier has submitted evidence that corrective actions have been taken; and (2) the FMCSA cannot make a final determination within the 45-day period. 49 C.F.R. § 385.17 (2011). Pornomo asserts that because the first May 13, 2011 FMCSA letter to Sky Express stated that the company had "failed to demonstrate that adequate corrective actions have been taken to address the acute and/or critical violations" and that the agency was "denying" Sky Express's request to upgrade its safety rating, J.A. 52, the FMCSA had already made a final determination as of that date. Pornomo thus asserts that neither condition was satisfied, such that the FMCSA was not vested with the discretion referenced in the regulation.

This argument cuts too fine a distinction. "Where there is room for policy judgment and decision there is discretion." Dalehite v. United States, 346 U.S. 15, 36 (1953). In Holbrook, this Court held that the discretionary function exception barred an FTCA claim arising from a Federal Aviation Administration ("FAA") issuance of an airworthiness certificate. 673 F.3d at 349. The Court determined that a predicate requirement in the relevant regulation, that an aircraft's application must include a certification from the country of manufacture that the aircraft conformed to its type design and was safe to operate, afforded discretion to the FAA to "make its own findings" whether the submitted documentation satisfied that requirement. Id. Likewise, as the district court noted, 49 C.F.R. § 385.17(f) is not a "check list." J.A. at 105. It leaves it to the FMCSA to determine whether a carrier's submission provides evidence that corrective action has been taken, and whether the agency has the resources to reach a final decision within 45 days. Such decisions, which relate to a regulatory agency's "implementation of a mechanism for compliance review" and necessarily require "balancing the objectives sought to be obtained against such practical considerations as staffing and funding," constitute discretionary functions themselves. Varig Airlines, 467 U.S. at 819-20 (holding that the FAA's application of a spot-check system to a particular aircraft was a

16

discretionary function).  Discretion thus suffuses 49 C.F.R. § 385.17(f) (2011), rather than, as Pornomo would have it, appearing only after certain mandatory predicates have been satisfied.

The FMCSA, in fact, exercised this discretion.  Although Pornomo focuses on the FMCSA's statement in its first May 13, 2011 letter that it was "denying" Sky Express's request, J.A. 52, an FMCSA internal memorandum dated May 12, 2011 indicates that the FMCSA had reviewed Sky Express's submission, found that it had submitted some evidence of corrective actions, but concluded that those actions did not address "all violations" and were "not sufficient to correct the deficiencies discovered during the compliance review." J.A. 44.  Rather than close the matter, the FMCSA then determined that it would conduct a follow-up compliance review "prior to June 7, 2011," which would be 10 days after the expiration of the 45-day period. Id. at 44.  It then informed Sky Express, in the first May 13 letter, of the follow-up compliance review and requested that Sky Express prepare to provide additional documentation "for examination" at that review. Id. at 53.  Thus, the FMCSA made the judgments that Sky Express had submitted some "evidence that corrective actions have been taken," 49 C.F.R. § 385.17 (2011), and that the FMCSA needed additional time to make a final determination on Sky Express's rating.

17

Ultimately, it does not matter whether the FMCSA was correct in these judgments. The discretionary function exception applies "whether or not the discretion involved be abused," 28 U.S.C. § 2680(a), and "even if the discretion has been exercised erroneously," Holbrook, 673 F.3d at 350 (quoting Gaubert, 499 U.S. at 338 (Scalia, J., concurring in part and concurring in the judgment)) (rejecting the argument that an allegedly erroneous determination by an FAA official that a helicopter conformed to a certificate requirement was not discretionary). "If it were not so, the protection of § 2680(a) would fail at the time it would be needed[.]" Dalehite, 346 U.S. at 36. Here, where the FMCSA made judgments on (1) whether Sky Express had submitted sufficient evidence of corrective action to warrant a follow-up compliance review and (2) whether such a review could reasonably and fairly be conducted without an extension of the 45-day period for establishing fitness, the FMCSA was exercising discretion within the meaning of the FTCA. The FMCSA may have taken certain "calculated risks," but it did so for a governmental purpose pursuant to a governing regulation. See Varig Airlines, 467 U.S. at 820 (holding that the FAA's alleged negligence in failing to check certain specific items in the course of certifying a specific aircraft as part of a spot-check program involved "calculated risks" but fell "squarely within the discretionary function

18

exception"). The district court thus properly concluded that the granting of the 10-day extension was a discretionary decision that could not form the basis of an FTCA claim.

## IV.

Pornomo further argues that even if the FMCSA was authorized by 49 C.F.R. § 385.17(f) to exercise its discretion to grant a 10-day extension, that regulation was invalid because the plain and unambiguous language of the underlying statute, 49 U.S.C. § 31144, barred the grant of any such extension. Pornomo's argument is essentially a challenge to the validity of 49 C.F.R. § 385.17(f) (2011). As such, it cannot be the basis of an FTCA claim. As a general matter, "[i]t was not intended that the constitutionality of legislation, the legality of regulations, or the propriety of a discretionary administrative act should be tested through the medium of a damage suit for tort." Dalehite, 346 U.S. at 27 (internal quotation mark omitted); Welch, Jr. v. United States, 409 F.3d 646, 653 (4th Cir. 2005) (stating that the FTCA does "not provide a venue in which to challenge the validity of [a] law"). More specifically, Congress has granted the courts of appeals exclusive jurisdiction to determine the validity of "all rules, regulations, or final orders of the Secretary of Transportation issued pursuant to . . . subchapter III of chapter 311 . . . of title 49," which includes 49 U.S.C. § 31144. 28 U.S.C.

19

§ 2342(3)(A). Because Pornomo's claim that the grant of a 10-day extension pursuant 49 C.F.R. § 385.17(f) violated 49 U.S.C. § 31144 amounts to a challenge to the validity of that regulation, the district court had no jurisdiction to hear it. See 28 U.S.C. § 2342(3)(A).

Even if Pornomo could challenge the validity of 49 C.F.R. § 385.17(f) in the district court, the court would still lack jurisdiction over his FTCA claim because the FMCSA's promulgation of the regulation was itself a discretionary act. "[T]here is no doubt that planning-level decisions establishing programs are protected by the discretionary function exception, as is the promulgation of regulations by which the agencies are to carry out the programs." Gaubert, 499 U.S. at 323. Thus, the FMCSA's decision to promulgate 49 C.F.R. § 385.17(f), even if that decision proved to be an abuse of discretion, would be shielded by the discretionary function exception. See 28 U.S.C. § 2680(a).

Pornomo attempts to circumvent this conclusion by asserting that 49 C.F.R. § 385.17(f) is so plainly at odds with the language of 49 U.S.C. § 31144(c)(2) that the promulgation of the regulation could not have been an act of discretion. In support of this argument, he marshals 49 U.S.C. § 31144(c)(2), which requires that passenger carriers stop operating 45 days after they have been deemed unfit, and § 31144(c)(4), which grants the

20

Secretary discretion to "allow an owner or operator who is not fit to continue operating for an additional 60 days" if it is "making a good faith effort to become fit," but expressly exempts passenger carriers from that provision. The exclusion of passenger carriers from the 60-day extension, Pornomo reasons, must mean that no extension of the 45-day period is permitted. He also notes that in 2012, the FMCSA rescinded the 10-day extension provision in 49 C.F.R. § 385.17(f) to make the regulations "consistent with the policy and the statutory language" of 49 U.S.C. § 31144(c)(2) and (4). 77 Fed. Reg. at 64,759.

Yet Pornomo's conclusion is by no means certain. As drafted, 49 U.S.C. § 31144(c)(2) prohibits owners and operators of commercial passenger carriers from operating under certain conditions. The statute does not expressly proscribe or prescribe a particular course of action for the Secretary of Transportation. Nor does 49 U.S.C. § 31144(c)(4) flatly bar the FMCSA's action, because it exempts passenger carriers only from 60-day extensions, not necessarily ones of more modest duration, such as the one here. See Berkovitz, 486 U.S. at 536 (noting that a government official lacks judgment or choice for the purposes of determining whether the discretionary function exception applies when "a federal statute, regulation, or policy

21

<u>specifically</u> prescribes a course of action for an employee to follow") (emphasis added)).

While one may conclude, as the FMCSA itself later did, that the better reading of these statutory provisions is that 45 days is a hard deadline for passenger carriers with unsatisfactory ratings, a better reading is not the same as a necessary one. Considering that any waiver of sovereign immunity must be strictly construed, the FMCSA's decision to promulgate a regulation permitting 10-day extensions for passenger carriers was a permissible exercise of judgment subject to the FTCA's discretionary function exception and thus did not waive sovereign immunity. <u>See</u> <u>Gaubert</u>, 499 U.S. at 323. The district court therefore correctly dismissed the case for lack of subject matter jurisdiction.

Having reached this conclusion, we need not address the Government's argument that the FMCSA's conduct does not constitute a tort under Virginia law.

V.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>

22