**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1862

JUAN CARLOS BLANCO AYALA,

            Plaintiff – Appellant,

v.

UNITED STATES OF AMERICA,

            Defendant – Appellee.

------------------------------

AMERICAN IMMIGRATION COUNCIL; NATIONAL IMMIGRANT JUSTICE CENTER,

            Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T.S. Ellis, III, Senior District Judge.  (1:18-cv-01012-TSE-JFA)

Argued:  October 29, 2020                     Decided:  December 2, 2020

Before WILKINSON, HARRIS, and RICHARDSON, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Harris and Judge Richardson joined.

**ARGUED**:  Mark Alastair Stevens, MURRAY OSORIO PLLC, Fairfax, Virginia, for Appellant.  Elizabeth A. Spavins, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Tamara L. Jezic, JEZIC & MOYSE, LLC, Wheaton, Maryland, for Appellant.  G. Zachary Terwilliger, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. Mark Fleming, NATIONAL IMMIGRANT JUSTICE CENTER, Chicago, Illinois; Mary Kenney, Washington, D.C., Trina Realmuto, Emma Winger, AMERICAN IMMIGRATION COUNCIL, Brookline, Massachusetts, for Amici American Immigration Council and The National Immigrant Justice Center.

WILKINSON, Circuit Judge:

Juan Carlos Blanco Ayala brings this Federal Tort Claims Act (FTCA) suit against the United States for wrongful investigation, arrest, and detention. The district judge held that the discretionary function exception to the FTCA's waiver of sovereign immunity operated to defeat plaintiff's claims. *See* 28 U.S.C. § 2680(a). For the following reasons, we affirm.

I.

Plaintiff Blanco was born in El Salvador in 1978 and moved to the United States as a young child. In 1983, his parents divorced without a decree of custody. He became a lawful permanent resident in 1987, and his father was naturalized in 1995. At the time of his father's naturalization, Blanco lived with his father in Washington, D.C.

In February 2004, Blanco traveled from the United States to El Salvador. Upon his return to the United States, he was questioned several times by Customs and Border Protection (CBP) about his criminal convictions. He allegedly informed the officers that he lived with his father as a lawful permanent resident, that his father was a U.S. citizen, and that his parents had divorced without a custody decree. Blanco also claimed he asked the officers to investigate whether he was a U.S. citizen.

According to CBP emails, the officers concluded that Blanco was not a U.S. citizen because "his father d[id] not have legal custody in writing" and therefore Blanco "did not

3

qualify for derivative citizenship."[1] J.A. 9. The CBP informed Blanco of this, took him into immigration detention, and began removal proceedings. At the removal hearing, Blanco allegedly conceded all charges against him, including that he was not a U.S. citizen. In September 2004, an immigration judge ordered him removed, after which Blanco did not seek relief from removal or appeal the decision. He was removed from the United States to El Salvador in December.

Shortly after his removal, Blanco returned to the United States. U.S. Immigration and Customs Enforcement (ICE) officers took him into custody and detained him in November 2015. His 2004 removal order was reinstated. While he was in custody, his attorney presented evidence that Blanco was a citizen to the government, and ICE released him in April 2016. After his release, Blanco obtained a certificate of citizenship from the U.S. Citizenship and Immigration Services that showed a date of citizenship of June 8, 1995.

Blanco filed an administrative claim for damages with the Department of Homeland Security (DHS) in 2017. DHS denied his claims. Thereafter, he sued the United States under the FTCA in the Eastern District of Virginia in August 2018 for (1) assault and battery, (2) false arrest and imprisonment, (3) intentional infliction of emotional distress,

---

[1] Under the statute operative when Blanco's father was naturalized in 1995, "[a] child born outside of the United States of alien parents . . . becomes a citizen of the United States upon . . . [t]he naturalization of the parent having legal custody of the child when there has been a legal separation of the parents" if the "naturalization takes place while such child is unmarried and under the age of eighteen; and [s]uch child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent." 8 U.S.C. § 1432(a) (1994) (repealed 2000).

4

(4) negligence, and (5) negligent infliction of emotional distress. The district court dismissed the case under Rule 12(b)(1) for lack of subject matter jurisdiction, finding that the allegedly tortious conduct fell within the discretionary function exception to the FTCA's waiver of sovereign immunity. *Blanco Ayala v. United States*, 386 F. Supp. 3d 635, 637 (E.D. Va. 2019).

Plaintiff timely appealed the district court's decision. We have jurisdiction under 28 U.S.C. § 1291 to review the final judgment of the district court. We review this Rule 12(b)(1) dismissal *de novo*. *Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012).

## II.

As a general rule, the United States is immune from claims for money damages in civil suits. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 686–90 (1949). The FTCA waives the United States' sovereign immunity for civil suits for money damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Where the FTCA's waiver is operative, the government is liable in tort "in the same manner and to the same extent as a private individual under like circumstances." *Id.* § 2674. However, this broad waiver of sovereign immunity is cabined by a list of exceptions. *See id.* § 2680. As relevant to the instant case, the FTCA's waiver does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." *Id.* § 2680(a).

5

The exceptions to the FTCA's immunity waiver work to defeat the subject matter jurisdiction of the federal courts. *Indemnity Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009). Thus, the burden is on the plaintiff in such a civil suit to establish "that the discretionary function exception does not foreclose their claim." *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 857 (4th Cir. 2016).

This exception represents one limit to the extent of "Congress' willingness to impose tort liability upon the United States." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 808 (1984). It exists to prevent interference by the judiciary in the policy-laden balancing that accompanies the exercise of executive discretion. *See Baum v. United States*, 986 F.2d 716, 720 (4th Cir. 1993); *Tiffany v. United States*, 931 F.2d 271, 276 (4th Cir. 1991). Most importantly, the exception protects that "discretion of the executive . . . to act according to [his] judgment of the best course, a concept of substantial historical ancestry in American law." *Dalehite v. United States*, 346 U.S. 15, 34 (1953). Taken together, these considerations make manifest the important separation-of-powers principles that animate the discretionary function exception. *See Holbrook v. United States*, 673 F.3d 341, 345 (4th Cir. 2012).

To determine whether the exception applies, we must first ascertain whether the acts in question "are discretionary in nature," such that they "involv[e] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). The exception does "not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 586 U.S. at 536.

6

Second, we must determine whether the challenged "governmental actions and decisions" were "based on considerations of public policy." *Id.* at 537. When statutes, regulations, or agency guidelines grant discretion to a government agent, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Gaubert*, 499 U.S. at 324. In conducting this analysis, we do not "inquire whether policy considerations *were actually* contemplated in making a decision." *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002). Rather, we consider only whether "the nature of the challenged decision in an objective, or general sense, . . . is one which we would expect inherently to be grounded in considerations of policy." *Baum*, 986 F.2d at 721.

### III.

Having reviewed the discretionary function exception's framework, we now turn to Blanco's claims in the instant case. He has alleged that DHS officers are liable for assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress arising out of their arrest, detention, transportation, and incorrect citizenship determination of Blanco. *See* J.A. 11–13. Plaintiff argues that DHS officers do not have discretion to arrest, detain, and deport U.S. citizens, and thus the discretionary function exception does not apply. We are unpersuaded. Discretion lies at the heart of the DHS law enforcement function. *See Arpaio v. Obama*, 797 F.3d 11, 16 (D.C. Cir. 2015) (recognizing DHS enforcement discretion). In deciding whom to investigate, detain, and then remove, DHS officers must make all the kinds of classic judgment calls the discretionary function exception was meant to exempt

7

from tort liability. *See Suter v. United States*, 441 F.3d 306, 311 (4th Cir. 2006) (recognizing discretion in FBI's investigative choices); *see also Tsolmon v. United States*, 841 F.3d 378, 382–84 (5th Cir. 2016) (recognizing discretion in CBP's investigation and detention of H1-B temporary worker).

A.

We begin by considering the first *Berkovitz* prong—whether the government conduct "involves an element of judgment or choice." 486 U.S. 531, 536 (1988). Plaintiff and the government offer two different frames for analyzing the DHS officers' decisions to investigate, arrest, detain, and deport in this case. Blanco claims we should segment this sequence. While he concedes that investigation may be a discretionary undertaking, he claims that the same cannot be said for arrest and detention. The government frames these actions as a single immigration enforcement process. We think plaintiff's attempt to slice up the process is unfounded.

The law enforcement function is a continuum where the products of the investigation are integrally related to the decision on whether to proceed further with detention and removal. "No one can doubt that the investigation of (potential) crimes" is a "discretion-laden subject[]." *Linder v. United States*, 937 F.3d 1087, 1091 (7th Cir. 2019). The later steps of detention and removal depend in part upon facts gathered during the investigation and the conclusions drawn from those facts. Thus, the decisions to detain and remove are discretionary because they are bound up in the decisions surrounding the investigatory step.

But that is not the only way in which the decisions to detain and remove are discretionary. They are discretionary even independently of the investigation because they depend on a further decision to prosecute and remove. *See Medina v. United States*, 259 F.3d 220, 227 (4th Cir. 2001) (recognizing INS' prosecutorial discretion). There may be many situations with similar facts and legal considerations that lead to different decisions depending, in part, on "whether [a] particular enforcement action . . . best fits the agency's overall policies." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Thus, this process is infused with discretion thrice-over—whether to investigate a possible violation of immigration law, how to conduct that investigation, and then whether to bring an enforcement action after drawing factual and legal conclusions. And none of those discretion-laden questions can be disentangled from the other two.

The statutory language supports the government's view of the discretion afforded to DHS officers. The grant of arrest authority to DHS officers is when he or she "has reason to believe that the alien so arrested is in the United States in violation of" federal law. 8 U.S.C. § 1357(a)(2); *see also id.* § 1357(a)(4). When there is a warrant, "an alien *may* be arrested and detained." *Id.* § 1226(a) (emphasis added). Plaintiff attempts to locate a mandatory directive that no law enforcement officer may arrest and detain a U.S. citizen. It would be an odd corpus of law, however, that did not contain somewhere within it some provision that could be seen as a mandatory directive. But we must "construe the nature of the statutory and regulatory regime as a whole," not isolate an individual provision from its context. *Seaside Farm, Inc. v. United States*, 842 F.3d 853, 859 (4th Cir. 2016); *see also Holbrook v. United States*, 673 F.3d 341, 348 (4th Cir. 2012) (recognizing that "[t]he

9

existence of some mandatory language does not eliminate discretion" (quoting *Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998))). In this case, federal law has explicitly underscored the discretion of law enforcement by using a "reason to believe" standard. Such a standard recognizes that judgment calls must be made about the significance of the evidence DHS officers have collected.

Plaintiff's argument fails for a second, related reason. Having recognized that the DHS officers' choice to investigate Blanco and how they conducted that investigation were discretionary, he nonetheless argues that they did not have discretion to "incorrectly appl[y] the law to the facts and wrongly identif[y] Blanco as a noncitizen." Opening Br. of Appellant at 24; *see also id.* at 24–25. This is effectively arguing that the officers' actions were not discretionary because they were negligent in executing their mandate. But the discretionary function exception protects government decisions "even when made negligently." *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017). And the statutory language goes further—it provides protection from suit "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also Holbrook*, 673 F.3d at 350 (noting that the "exception applies 'even if the discretion has been exercised erroneously'" (quoting *United States v. Gaubert*, 499 U.S. 315, 338 (1991) (Scalia, J., concurring in part and concurring in the judgment)). The ultimate decisions of law enforcement officers need not be correct in order to be exempted from the FTCA's waiver of sovereign immunity under the discretionary function exception. Plaintiff's position would be akin to concluding that a district court did not exercise discretion in applying law to facts when its decision is later

10

overturned on appeal. This misunderstands both the nature of discretion and how human judgment is exercised.

It is of course the case that many grants of immunity expressly contemplate that a mistake may be made without loss of a legal shield. *See, e.g.*, *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347–51 (1871) (discussing judicial immunity). In this particular case, there is a dispute over the DHS officers' mistake as to plaintiff's derivative citizenship and plaintiff's alleged concession of alienage before the immigration judge. We do not, however, see the debate over these particular facts as one that is dispositive. An immunity expresses a willingness to tolerate the occasional mistake in the service of a larger public good. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982) (including public goods such as protecting the public fisc from "the expenses of litigation," preventing "the diversion of official energy from pressing public issues," and avoiding "the deterrence of able citizens from acceptance of public office"). The discretionary function exception's language—"whether or not that discretion be abused"—makes perfectly clear that the FTCA regime accepts a similar tradeoff. And, for immunity to have meaning, it must work to protect the government from the burdens of litigation, not just the burdens of an adverse judgment. *See, e.g.*, *Mitchell v. Forsyth*, 472 U.S. 511, 526–27 (1985).

The common good here is, in part, grounded in the need for effective enforcement of immigration policy—a policy which touches upon vital national interests in law enforcement at the borders. *See, e.g.*, *United States v. Flores-Montano*, 541 U.S. 149, 152–53 (2004) (recognizing heightened government interest in law enforcement at its borders). And while it may not appear that an individual arrest and detention has broad

11

policy implications, it is inescapable that when considered in the aggregate, the drawbacks of accepting plaintiff's position are quite large. A system in which every instance of mistaken arrest or detention could give rise to a suit in tort would seriously hamstring DHS in its efforts to enforce immigration law. Not surprisingly, Judge Learned Hand put it best: "[T]o submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949).

## B.

Next, we turn to the second *Berkovitz* prong—whether the DHS officers' actions were "based on considerations of public policy." *Berkovitz*, 486 U.S. at 537. The relevant inquiry here is not whether the decisions in question occurred at a "planning" level or "whether policy considerations *were actually* contemplated in making a decision," *Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 208 (4th Cir. 2002); rather, the proper inquiry is whether, considering "the inherent, objective nature of the challenged decision[s]," they are "actions of the type normally thought to involve policy choices," *Baum*, 986 F.2d at 721. As the Supreme Court has noted, the grant of discretion "creates a strong presumption that a discretionary act" so authorized "involves consideration[s]" of public policy. *Gaubert*, 499 U.S. at 324.

In the instant case, it is clear for many of the reasons above discussed that plaintiff has failed to meet his burden of establishing that there are no considerations of public policy in this case. DHS officers' decisions in investigating and responding to potential

12

violations of immigration law are infused with public policy considerations. *See Medina*, 259 F.3d at 228–29 (holding that the decision to arrest and detain immigrant was "clearly clothed in public policy considerations"); *see also Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983) ("Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law, and, accordingly, courts have uniformly found them to be immune under the discretionary function exception."). First, since they cannot catch all violators, DHS officials must allocate limited agency resources so as to prioritize the most important cases. *See Borzilleri v. Mosby*, 874 F.3d 187, 191 (4th Cir. 2017) (recognizing in the First Amendment context that prosecutors must make policy judgments in allocating limited resources). In deciding how to investigate Blanco's claims and what to do with that information, the officers exercised discretion in allocating their time, legal resources, and detention capacity. Second, in making these immigration enforcement decisions, the executive must confront issues which have "the natural tendency to affect diplomacy, foreign policy, and the security of the nation." *Tun-Cos v. Perrotte*, 922 F.3d 514, 526 (4th Cir. 2019) (quoting *Mirmehdi v. United States*, 689 F.3d 975, 983 (9th Cir. 2012)). Taken together, these resource and foreign policy considerations demonstrate that Blanco has not met his burden on the second *Berkovitz* prong.

## C.

Plaintiff is correct that this decision, combined with our *Tun-Cos* opinion on the availability of a *Bivens* suit, leaves potential victims of allegedly tortious actions by immigration officials without recourse to money damages. But that absence is not due to

13

the judiciary, but rather Congress, which need not have waived immunity at all. Going back to the English Chancery, waivers of immunity have always been acts of grace, not of right. *See* 1 William Blackstone, *Commentaries* \*243 ("[I]f any person has, in point of property, a just demand upon the king, he must petition him in his court of chancery, where his chancellor will administer right as a matter of grace, though not upon compulsion.").

The safeguards against unfortunate mistakes in this whole field lie not in a tort action but in the elaborate administrative removal process, which involves multiple proceedings before an immigration judge, the Board of Immigration Appeals, and, finally, the federal courts. *See* 8 U.S.C. §§ 1229a, 1252; 8 C.F.R. §§ 1003.1–.3.

Finally, we note that plaintiff's position would throw us into conflict with other courts, which is never desirable in an area such as immigration, where the national interest across many different regions is the same as we have annunciated here. *See Arteaga-Ruiz v. United States*, 705 F. App'x 597, 598 (9th Cir. 2017). Discretionary decisions by DHS officials lie at the heart of national immigration policy and the potential interference of plaintiff's tort suit with the effectuation of that policy is clear.

IV.

The government advances many other reasons why Blanco's claim should be defeated: the FTCA's due care exception, the FTCA's judicial immunity exception, the FTCA's statute of limitations, and the Immigration and Nationality Act's jurisdictional bar. Because the discretionary function exception applies so plainly here, we need not consider the government's other arguments. For the foregoing reasons, the judgment is

*AFFIRMED.*

14