**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1642

RONNIE L. BLANKENSHIP,

Plaintiff – Appellant,

v.

UNITED STATES OF AMERICA,

Defendant – Appellee.

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:18-cv-01309)

Submitted:  April 25, 2022                                      Decided:  June 1, 2022

Before WILKINSON, RICHARDSON, and RUSHING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Tyler C. Haslam, HASLAM LAW FIRM LLC, Proctorville, Ohio, for Appellant.  Michael B. Stuart, United States Attorney, Jason S. Bailey, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ronnie Blankenship brought this Federal Tort Claims Act (FTCA) suit against the United States for malicious prosecution and intentional infliction of emotional distress after he was acquitted of stealing from his employer, the Department of Veterans Affairs (VA). The district court granted the Government's motion to dismiss for lack of jurisdiction, ruling that the discretionary function exception to the FTCA's waiver of sovereign immunity applied. *See* 28 U.S.C. § 2680(a). For the following reasons, we affirm.

I.

Blankenship worked at a VA Medical Center in Huntington, West Virginia. In September 2014, Blankenship and his friend John Erik Stone removed a meat slicer from the VA premises—from either a dumpster or the back of a golf cart, depending on who you ask. Stone later posted the meat slicer for sale on the Internet, and a fellow employee noticed and told her supervisor, who reported it to the VA Police Service. Two VA police officers—Service Patrol Officer Joseph Wayman and Lieutenant Darrell Booth—investigated the theft; they also notified the Federal Bureau of Investigation and the Huntington Police Department.

The officers arranged an undercover operation to catch the thief. Booth contacted Stone to buy the meat slicer, and Stone connected Booth with Blankenship to make the sale. When Blankenship met with Huntington Police Detective Sergeant Brian Lucas to transfer the meat slicer, Lucas verified the serial number and arrested Blankenship. He was charged in state court but ultimately acquitted.

Blankenship then sued the United States under the FTCA, which authorizes suits against the federal government based on state law. His amended complaint included counts for malicious prosecution and intentional infliction of emotional distress, alleging that VA police officers "initiated and persisted with maintaining a criminal proceeding against [Blankenship] which they knew was unfounded and lacked a basis in law or fact." J.A. 22. According to the complaint, the VA had "no policies regarding abandonment of inoperable property," "no rule, regulation or policy prohibiting [VA] employees from taking abandoned and discarded items from the dumpster," and no "authority to arrest [VA] employees for removing discarded property from the subject dumpster." J.A. 11–12. Blankenship also brought a count for defamation, which he does not pursue on appeal.

The Government moved to dismiss the amended complaint for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and relied on extrinsic evidence to contest a number of Blankenship's jurisdictional allegations. For example, the Government cited 38 C.F.R. § 1.218(a)(3), which prohibits "removal of Government property or any part thereof, without authorization," and a 2013 VA policy prohibiting "the actual or attempted theft, and/or removal of any VA property, or any part thereof . . . includ[ing] . . . trash," J.A. 147. Blankenship responded with evidence of his own. Applying the summary judgment standard to the parties' competing submissions, *see Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991), the district court concluded that no dispute of material jurisdictional fact existed and that the FTCA's discretionary function exception barred Blankenship's claims for malicious prosecution and intentional infliction of emotional distress. *See Blankenship v. United States*, No. 3:18-

3

cv-1309, 2020 WL 1860715 (S.D. W. Va. Apr. 9, 2020).  The court explained that federal law and VA policies grant VA police officers broad law enforcement and arrest powers with respect to acts occurring on VA property, including significant "discretion in determining the methods, aims, and results" of any investigation and prosecution.  *Id.* at *4.  Blankenship appealed.

## II.

We review de novo the district court's decision dismissing this case for lack of subject matter jurisdiction.  *See Rich v. United States*, 811 F.3d 140, 144 (4th Cir. 2015).

## A.

As an initial matter, Blankenship contends that the district court erred by construing the Government's jurisdictional challenge as factual rather than facial.  According to Blankenship, the district court should have assumed the truthfulness of his jurisdictional allegations rather than considering whether the parties' extrinsic evidence demonstrated a dispute of material fact.  Because the Government contested the allegations supporting subject matter jurisdiction and the parties both introduced evidence, we conclude that the district court was correct to "go beyond the allegations in the complaint" and "determine if there are facts to support the jurisdictional allegations."  *Id.* at 145 (internal quotation marks omitted).

Blankenship alternatively argues that, assuming the jurisdictional facts are disputed, they are "so intertwined with the merits that dismissal under Rule 12(b)(1) was inappropriate." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).  In support, he asserts that the parties dispute "what investigatory actions Officer Booth and Officer

4

Wayman were required to take in order to conduct an off-property investigation into allegations of theft" of VA property. Opening Br. 16. Upon review, we conclude that the facts necessary to determine whether the officers' investigation and prosecution qualifies as a discretionary function differ from the proof "required to establish the substantive elements of [Blankenship's] claims" of malicious prosecution and intentional infliction of emotional distress—they are "wholly distinct." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 350 (4th Cir. 2009); *see Norfolk S. Ry. Co. v. Higginbotham*, 721 S.E.2d 541, 545–546 (W. Va. 2011) (elements of malicious prosecution claim); *Hatfield v. Health Mgmt. Assocs. of W. Va.*, 672 S.E.2d 395, 404 (W. Va. 2008) (elements of intentional infliction of emotional distress claim). The district court therefore appropriately resolved the jurisdictional dispute on the Government's motion to dismiss.

B.

We now turn to the substance of Blankenship's appeal. The United States is generally immune from claims for money damages in civil suits, but the FTCA waives that immunity in certain circumstances, rendering the United States liable in tort "in accordance with the law of the place where the act or omission occurred" in the same manner as a private individual. 28 U.S.C. § 1346(b)(1); *see id.* § 2674. "However, this broad waiver of sovereign immunity is cabined by a list of exceptions." *Blanco Ayala v. United States*, 982 F.3d 209, 214 (4th Cir. 2020); *see* 28 U.S.C. § 2680. As relevant here, the FTCA "shall not apply to . . . [a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C.

5

§ 2680(a).  Because the exception deprives the court of subject matter jurisdiction, the burden is on the plaintiff—here, Blankenship—to establish that the exception does not apply to foreclose his claim.  *See Blanco Ayala*, 982 F.3d at 214.

Courts apply a two-pronged test to determine whether conduct qualifies for the discretionary function exception.  "First, a court considers whether the challenged governmental conduct involves an element of judgment or choice."  *Rich*, 811 F.3d at 144 (citing *United States v. Gaubert*, 499 U.S. 315, 322 (1991)).  When "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," there is no discretion, and the exception does not apply.  *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  "Second, if the challenged conduct does involve an element of judgment, the court must then determine whether the judgment was one that the exception was designed to protect, namely, a judgment based on considerations of public policy." *Rich*, 811 F.3d at 144.  When a government agent has authority to exercise discretion, the court should "'presume[] that the agent's acts are grounded in policy when exercising that discretion.'"  *Blanco Ayala*, 982 F.3d at 214 (quoting *Gaubert*, 499 U.S. at 324).  In conducting this analysis, the court considers the decision "in an objective, or general sense" to determine whether it is one "we would expect inherently to be grounded in considerations of policy," not whether the government agents involved in the case actually contemplated policy considerations in making their decisions.  *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993).

We begin with the first prong of the analysis.  In his complaint, Blankenship alleges that VA police officers are liable for malicious prosecution and intentional infliction of

emotional distress arising from their arrest and prosecution of Blankenship for the alleged theft of the meat slicer.  Blankenship does not contest that whether and how to investigate and prosecute are generally matters of discretion.  *See Blanco Ayala*, 982 F.3d at 215 ("No one can doubt that the investigation of (potential) crimes is a discretion-laden subject." (internal quotation marks and brackets omitted)).  Indeed, discretion infuses the process at every step—"whether to investigate a possible violation of . . . law, how to conduct that investigation, and then whether to bring an enforcement action after drawing factual and legal conclusions."  *Id.* at 216.  Instead, Blankenship scours VA policies for mandatory language to find some command that the officers violated.  But none of the three candidates he identifies shows that his "claim [is] based upon" anything other than "the exercise or performance . . . [of] a discretionary function or duty."  28 U.S.C. § 2680(a).

First, Blankenship asserts that federal law and relevant policies impose a nondiscretionary duty to investigate offenses occurring on VA property.  *See, e.g.*, 38 U.S.C. § 902(a)(1)(E) (stating officers "shall . . . conduct investigations").  Even accepting that characterization, nowhere does Blankenship allege that any officer violated this duty; indeed, his claims are premised on the assertion that the officers *did* investigate the theft.  *Cf. Holbrook v. United States*, 673 F.3d 341, 348 (4th Cir. 2012) ("[T]he existence of some mandatory language does not eliminate discretion[.]" (internal quotation marks omitted)).

Second, Blankenship alludes to the probable existence of a "Standard Operating Procedure" document referenced in the VA handbook, and he surmises that it may contain requirements for conducting VA investigations.  This speculation does not demonstrate a

7

genuine dispute of material fact.  *See Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768.

Third, Blankenship contends that off-property investigations require approval from the Office of Operations, Security, and Preparedness, Office of Security and Law Enforcement (OSLE).  He notes that the VA officer handbook requires VA police officers to obtain this approval and document it in the "Police System Uniform Offense Report."  He "believe[s]" that the Investigative Report in the record is the Uniform Offense Report and notes that it does not mention obtaining OSLE approval.  Opening Br. 19–20.  The district court rejected this argument because Blankenship provides no reason to assume the Investigative Report would indicate OSLE approval if granted, *see Blankenship*, 2020 WL 1860715, at *5, and Blankenship does not respond to the district court's reasoning on appeal.  Moreover, Blankenship's allegation could not carry his jurisdictional burden even if it were true.  OSLE approval is unrelated to his claims, which are "based upon" the fundamentally discretionary acts of arrest and prosecution.  28 U.S.C. § 2680(a).  He offers no explanation for how failure to obtain OSLE approval at the beginning of the investigation would render any element of his arrest or prosecution nondiscretionary.

As for the second prong of the discretionary function analysis, Blankenship makes no argument.  We have previously acknowledged that "the grant of discretion creates a strong presumption that a discretionary act so authorized involves considerations of public policy."  *Blanco Ayala*, 982 F.3d at 217 (internal quotation marks and brackets omitted).  We accordingly conclude that the VA officers' actions "investigating and responding to

8

potential violations of . . . law," including their decisions to arrest and prosecute, were "based on considerations of public policy." *Id.* (internal quotation marks omitted).

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.
