**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 21-2185**

---

NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION,

Plaintiff - Appellant,

v.

XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; CENTER FOR MEDICARE AND MEDICAID SERVICES,

Defendants - Appellees.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge.  (5:20-cv-00522-FL)

---

Argued:  October 28, 2022                    Decided:  December 14, 2022

---

Before THACKER, and HEYTENS, Circuit Judges, and Lydia K. GRIGGSBY, United States District Judge for the District of Maryland, sitting by designation.

---

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Judge Heytens and Judge Griggsby joined.

---

**ARGUED:**  Christopher J. Blake, NELSON MULLINS RILEY & SCARBOROUGH LLP, Raleigh, North Carolina, for Appellant.  Neal Fowler, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Joseph W. Eason, NELSON MULLINS RILEY & SCARBOROUGH LLP, Raleigh, North Carolina,

for Appellant.  Michael F. Easley, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellees.

———————

THACKER, Circuit Judge:

This case stems from a request by the North Carolina Insurance Guaranty Association ("Appellant") to the Center for Medicare and Medicaid Services ("CMS") seeking an advisory opinion about whether Appellant is required to reimburse Medicare for certain medical bills that Medicare pays on behalf of insured individuals. CMS declined to issue the requested opinion. Dissatisfied with this response, Appellant filed this action against Alex M. Azar, II, in his official capacity as Secretary of the United States Department of Health and Human Services ("HHS"), HHS, and CMS (collectively, "Appellees").[1]

In this appeal, Appellant challenges the district court's determination that Appellant lacked standing to bring this action because it failed to plausibly allege that it suffered an injury-in-fact. Additionally, Appellant challenges the district court's conclusion that it did not possess jurisdiction over the action because Appellant failed to exhaust its administrative remedies.

For the reasons below, we affirm.

## I.

## A.

Appellant is a statutorily created association whose members consist of insurers permitted to conduct business in North Carolina and to write insurance policies pursuant

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the district court substituted Xavier Becerra, who is Alex M. Azar, II's successor as the Secretary of HHS, as a party in this litigation.

3

to the Insurance Guaranty Association Act (the "Guaranty Act"), N.C. Gen. Stat. § 58-48-1 et seq. Appellant does not issue insurance policies or collect premiums. Instead, this association was created to "provide a limited form of protection to North Carolina claimants and insureds that certain liability claims will be paid in the event of the insolvency of a member insurer." J.A. 8.[2] However, Appellant is obligated to step into the shoes of an insolvent insurer only when the claimant asserts a covered claim.

The Medicare Secondary Payer Act ("MSPA"), 42 U.S.C. § 1395y(b), prohibits the Government -- specifically CMS -- from footing the bill for an insured individual's medical care when payment could be made by a "primary plan." Prior to the MSPA, Medicare paid for services regardless of whether a private insurer was also responsible. *See Netro v. Greater Balt. Med. Ctr., Inc.*, 891 F.3d 522, 524 (4th Cir. 2018) ("Before the legislation went into effect, Medicare would pay for all medical treatment within its ambit, even if a private party such as an insurer was also responsible."). Pursuant to the MSPA, "primary plan" means:

> a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies. An entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part.

---

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

42 U.S.C. § 1395y(b)(2)(A)(ii). This case centers on the issue of whether Appellant qualifies as a "primary plan," and, as such, may be required to reimburse Medicare for medical bills that it pays on behalf of insured individuals.

To help Medicare keep track of expected reimbursements, in 2007, Congress added reporting requirements via Section 111 of the Medicare, Medicaid, and State Children's Health Insurance Program Extension Act of 2007 ("Section 111"). Pub. L. No. 110-173, § 111, 121 Stat. 2492, 2497–500 (2007), codified at 42 U.S.C. § 1395y(b)(7)-(8). Section 111 requires primary plans to submit periodic reports to CMS identifying when they have a responsibility to pay for the medical care of a Medicare beneficiary. In addition to this reporting requirement, Section 111 also includes a penalty provision, which authorizes CMS to impose a penalty of up to $1,000 per day for non-compliance.

On January 10, 2013, President Obama signed into law the Medicare IVIG Access and Strengthening Medicare and Repaying Taxpayers Act of 2012 (the "SMART Act"). SMART Act of 2012, Pub. L. No. 112-242, 126 Stat. 2374. The SMART Act included several amendments to the MSPA, two of which are relevant here. First, the SMART Act instructed the Secretary to begin rulemaking on the "practices for which sanctions will and will not be imposed." SMART Act § 203. However, nearly a decade later, a final rule outlining the circumstances warranting Section 111 sanctions remains pending, and it is unclear when this rule may become effective. In any event, CMS has indicated that if enacted, the proposed rule would only be imposed prospectively. *See* Medicare Program; Medicare Secondary Payer and Certain Civil Money Penalties, 85 Fed. Reg. 8,793 (proposed Feb. 18, 2020).

5

Second, the SMART Act required the Secretary to "promulgate regulations establishing a right of appeal and appeal process," SMART Act § 201, for plans when Medicare pursues a Medicare Secondary Payer recovery claim directly from that plan. On April 28, 2015, a final rule establishing an appeals process for insurers who want to challenge Medicare's request for repayment became effective. *See* Medicare Program; Right of Appeal for Medicare Secondary Payer Determinations Relating to Liability Insurance (Including Self-Insurance), No-Fault Insurance, and Workers' Compensation Laws and Plans, 80 Fed. Reg. 10,611 (Feb. 27, 2015) (codified in scattered sections of 42 C.F.R. § 405). This process includes four levels of review before such a challenge is entitled to judicial review in federal district court.

First, the insurer may seek reconsideration of Medicare's decision through a process called "redetermination." 42 C.F.R. § 405.940. "In conducting a redetermination, the contractor [3] reviews the evidence and findings upon which the initial determination was based, and any additional evidence the parties submit or the contractor obtains on its own." 42 C.F.R. § 405.948. Second, if the insurer is dissatisfied with the result of the

---

[3] According to CMS's website, a Medicare Administrative Contractor ("MAC") is "a private health care insurer" who is "responsible for administering Medicare Part A and Part B claims." CMS, *What is a MAC*, https://www.cms.gov/Medicare/Medicare-Contracting/Medicare-Administrative-Contractors/What-is-a-MAC (last visited Dec 1, 2022) (saved as ECF opinion attachment). Redeterminations are conducted by MAC "personnel not involved in the initial claim determination." CMS, *First Level of Appeal*, https://www.cms.gov/Medicare/Appeals-and-Grievances/OrgMedFFSAppeals/RedeterminationbyaMedicareContractor (last visited Dec. 1, 2022) (saved as ECF opinion attachment).

6

redetermination, it can seek reconsideration of the contractor's determination through a separate qualified independent contractor. 42 C.F.R. § 405.960. At the reconsideration stage, "a party should present evidence and allegations of fact or law related to the issue in dispute and explain why it disagrees with the initial determination, including the redetermination." 42 C.F.R. § 405.966. Third, if the insurer is not satisfied with the outcome of the reconsideration, it may request a hearing before an Administrative Law Judge ("ALJ"). 42 C.F.R. § 405.1000. Fourth, if the insurer is not satisfied with the ALJ's decision, it can request that the Medicare Appeals Council (the "Council") review that decision. 42 C.F.R. § 405.1100. Only after the Council renders a decision can the insurer seek review by the federal courts. 42 C.F.R. § 405.1136.

B.

On June 1, 2020, Appellant sent a letter to CMS ("Appellant's Letter"), requesting a written opinion stating that Appellant is not a primary plan within the meaning of the MSPA, and, as a result, is not required to comply with the reporting requirements of Section 111. In support of this position, Appellant's Letter cited the Ninth Circuit's decision in *California Insurance Guarantee Ass'n v. Azar* (*CIGA*), 940 F.3d 1061, 1063 (9th Cir. 2019), which held that the insurance association in that case was not a primary plan within the meaning of the MSPA. After the *CIGA* decision, CMS provided a letter to the *CIGA* plaintiff confirming that in accordance with the Ninth Circuit's ruling, the *CIGA* plaintiff was not required to comply with Section 111.

On August 12, 2020, CMS responded to Appellant's Letter. In its response, CMS declined to issue the requested opinion and further stated that it does not believe *CIGA*

7

applies to Appellant. Thereafter, Appellant brought this action. In the complaint, Appellant asserts the following three claims: (1) a declaratory judgment claim pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that Appellant is not a primary plan pursuant to the MSPA; (2) a claim pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*; and (3) a claim seeking judicial review of CMS's response to Appellant's Letter, pursuant to 42 U.S.C. § 405(g), as incorporated into the Medicare Act[4] through 42 U.S.C. § 1395ii.

On January 29, 2021, Appellees moved to dismiss Appellant's complaint on two grounds. First, Appellees argued that Appellant did not have standing. Second, Appellees maintained that even if Appellant had standing, dismissal was required because Appellant did not establish a basis for the district court to conclude that it had federal question jurisdiction over the action.

On September 21, 2021, the district court granted Appellees' motion to dismiss. The district court determined that Appellant lacked standing because it failed to sufficiently allege an injury-in-fact, and even if Appellant did have standing, the court did not have federal question jurisdiction over the action because Appellant failed to exhaust its administrative remedies as required by the Medicare Act.

---

[4] The Medicare Act, 42 U.S.C. § 1395 *et seq.*, "establishes a federally subsidized health insurance program for eligible aged and disabled persons." *MacKenzie Med. Supply, Inc. v. Leavitt*, 506 F.3d 341, 343 (4th Cir. 2007).

8

Appellant timely filed its notice of appeal. [5]

## II.

"We review issues of subject matter jurisdiction de novo." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017); *see also Ali v. Hogan*, 26 F.4th 587, 595 (4th Cir. 2022) ("We review de novo a district court's dismissal of a complaint for want of Article III standing to sue — and thus for lack of subject matter jurisdiction — under Federal Rule of Civil Procedure 12(b)(1)."). "In determining whether subject matter jurisdiction exists, [we are] not limited to the grounds relied on by the district court, but rather may affirm on any grounds apparent from the record." *Pornomo v. United States*, 814 F.3d 681, 687 (4th Cir. 2016).

## III.

Appellant argues that the district court erred by dismissing its complaint for two reasons. First, Appellant asserts that it sufficiently alleged the injury-in-fact element of Article III standing. Specifically, Appellant argues that the potential repayments to Medicare, the potential penalties that could be imposed if it failed to comply with Section 111's reporting requirements, and the burdens and expenses that it incurred constitute an injury-in-fact. Second, Appellant contends that the district court had jurisdiction over the

---

[5] Appellant does not reference the district court's dismissal of its APA claim in this appeal. Therefore, Appellant has forfeited any challenge to the district court's dismissal of that claim. *See A Helping Hand, LLC v. Baltimore Cnty.*, 515 F.3d 356, 369 (4th Cir. 2008) ("It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned.").

9

case because its claims for declaratory relief are not subject to 42 U.S.C. § 405(h)'s bar against federal question jurisdiction.

Even assuming Appellant has standing, we conclude that the district court properly determined that it did not have jurisdiction over this case because 42 U.S.C. § 405(h) precludes federal question jurisdiction for claims against the United States or its agents if such claims arise under the Medicare Act. *See* 42 U.S.C. § 405(h) ("No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."); *see also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000) (explaining that § 405(h)'s bar against federal question jurisdiction is incorporated into the Medicare Act through 42 U.S.C. § 1395ii).

In *Illinois Council*, the Supreme Court described § 1395ii's incorporation of § 405(h) into the Medicare Act as a "channeling requirement," 529 U.S. at 19, which "demands the channeling of virtually all legal attacks through the agency." *Id.* at 13 (internal quotation marks omitted). However, there is one narrow exception to § 405(h)'s channeling requirement. This exception stems from the Supreme Court's decision in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 680 (1986), and allows a plaintiff to escape the channeling requirement "where application of § 405(h) would not simply channel review through the agency, but would mean no review at all." *Ill. Council*, 529 U.S. at 19. At oral argument, Appellant conceded that the only possible basis for subject matter jurisdiction in this case is the Medicare statute. *See* Oral Argument at 50:05–50:57, *N.C. Ins. Guar. Ass'n v. Becerra*, No. 21-2185 (4th Cir. Oct. 28, 2022),

10

http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. Accordingly, there is no dispute that unless the *Michigan Academy* exception applies, Appellant was required to comply with § 405(h)'s channeling requirement.

In *Illinois Council*, the Supreme Court explained that the *Michigan Academy* exception is limited to circumstances in which the application of the channeling requirement would result in "a *complete* preclusion of review." *Ill. Council*, 529 U.S. at 22–23 (emphasis in original). Here, Appellant maintains that the *Michigan Academy* exception applies because its principal claim -- that it is not a primary plan -- cannot be channeled through the administrative review process, and thus, requiring it to comply with § 405(h)'s channeling requirement would result in a complete preclusion of review.

The district court concluded, "The plain language of *Illinois Council* and § 405 preclude invocation of the court's federal question jurisdiction in this instance." *N.C. Ins. Guar. Ass'n v. Becerra*, No. 5:20-cv-522, 2021 WL 4302243, at *9 (E.D.N.C. Sept. 21, 2021) (internal citation omitted). In rejecting Appellant's argument that § 405(h) did not apply to Appellant's claims because they do not arise under the Medicare Act, the district court noted that Appellant's argument is "belied by its invocation, inter alia, of 42 U.S.C. § 1395ii as a jurisdictional basis, when that section specifically incorporates subsection (h) of section 405." *Id.* at *10 (alterations adopted and internal quotation marks omitted). The district court also emphasized that there are policy reasons for rejecting Appellant's argument that its claims are not subject to § 405(h)'s channeling requirement, reasoning:

> Recognizing plaintiff's suggested exemption to § 405(h)
> would create an impermissible and easily invoked loophole to
> a process that the Supreme Court has described as demanding

11

> the 'channeling' of virtually all legal attacks through the relevant agency, including disputes as to the application, interpretation, or constitutionality of interrelated regulations or statutory provisions.

*Id*. (alterations adopted and internal citations and quotation marks omitted). Finally, the district court determined that Appellant cannot rely on the traditional exceptions to the exhaustion requirement because *Illinois Council* explained that "the bar of § 405(h) reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies' and prevents application of 'ripeness' and 'exhaustion' exceptions." *Id*. at *11 (internal citations and quotation marks omitted).

Significantly, Appellant's position that its claim cannot be channeled through the administrative process is belied by the fact that it is currently challenging its status as a primary plan in at least one administrative appeal. *See* Appellees' Br. at 33 n.6 ("[A]fter filing its lawsuit, [Appellant] administratively appealed such MSP[A] reimbursement demands and asserted in at least one appeal the very MSP[A] applicability arguments, namely its status as a primary plan under MSP[A] requirements, it presented in its complaint.").[6]    Indeed, Appellant's 2022 Annual Report specifically references Appellant's participation in the MSPA administrative appeals process. *See* NCIGA, *2022 Annual Report*, https://www.ncrb.org/Portals/3/nciga/annual%20reports/NCIGA%202022%20AR%20(web).pdf?ver=2022-10-18-150019-300 (last visited Dec. 1, 2022)

---

[6] We take judicial notice of the existence of the administrative appeal as its existence is a matter that "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b).

(saved as ECF opinion attachment). Appellant does not dispute the Government's assertion that it has presented the arguments that it raises here in its administrative appeal. Accordingly, we conclude that the existence of the administrative appeal is fatal to Appellant's claim that it is completely precluded from seeking review of its argument that it is not a primary plan through the administrative process.

Additionally, we agree with the district court that the ordinary exceptions to the exhaustion requirement are inapplicable here, particularly in light of the Supreme Court's guidance in *Illinois Council*, which explained that § 405(h)'s "bar reaches beyond ordinary administrative law principles of 'ripeness' and 'exhaustion of administrative remedies'— doctrines that normally require § 405(h) channeling a legal challenge through the agency— *by preventing the application of exceptions to those doctrines*." 529 U.S. at 2 (emphasis supplied).

Lastly, we note that our decision is consistent with the Seventh Circuit's recent decision in *Illinois Insurance Guaranty Fund* (*IIGF*) *v. Becerra*, 33 F.4th 916 (7th Cir. 2022) and the Ninth Circuit's decision in *California Insurance Guarantee Ass'n v. Azar* (*CIGA*), 940 F.3d 1061 (9th Cir. 2019). The critical issue in both *IIGF* and *CIGA* was whether a state-created insolvency insurance association is a primary plan, and, as such, is subject to the requirements of the MSPA. In *CIGA*, the court answered that question in the negative, holding that the insolvency insurer was not a primary plan under the MSPA but rather "is an insolvency insurer of last resort." 940 F.3d at 1063–64. Conversely, in *IIGF*, the court determined that it did not have jurisdiction to weigh in on the matter because the plaintiff in that case failed to exhaust its administrative remedies prior to seeking relief in

13

federal court. 33 F.4th at 927. In reaching this conclusion, the *IIGF* court noted, "[w]hile applying § 405(h) to foreclose federal-question jurisdiction might cause delay and inconvenience, it would not amount to a complete preclusion of judicial review." *Id*. at 926.

In explaining why its decision was not in conflict with *CIGA*, the *IIGF* court emphasized that the administrative appeals process with respect to Medicare reimbursement claims "was not finalized until after [the plaintiff in] *CIGA* filed suit, so the initial determinations sent to [the plaintiff in] *CIGA* were deemed final agency actions subject to judicial review." *IIGF*, 33 F.4th at 926. This is so because the plaintiff in *CIGA* filed suit in February 2015, but as we have explained, the appeals process did not become effective until two months later, in April 2015. *See Cal. Ins. Guar. Ass'n v. Burwell*, 227 F. Supp. 3d 1101, 1117 (C.D. Cal. 2017) ("Shortly after [the plaintiff in *CIGA*] filed suit, CMS created an administrative appeals process that every disputed reimbursement demand must go through before judicial review."). Leaving no doubt, the court in *IIGF* clarified, "In contrast, the jurisdictional bar of § 405(h) controls the [plaintiff's] claim because it can use the appeals process for Medicare demands for repayment to challenge its status as a primary plan." 33 F.4th at 926–27. The same is true here.

*IIGF* is well-reasoned and persuasively highlights the distinction between cases filed before and after the implementation of the appeals process for MSPA claims. Applying the reasoning of *IIGF* here, we conclude that the district court properly dismissed Appellant's complaint because there is no dispute that Appellant did not pursue its administrative remedies in this case, and, as a result, its claims are barred by § 405(h).

14

IV.

For the reasons set forth herein, we affirm the district court's dismissal of Appellant's complaint.

*AFFIRMED*