**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-1412**

BLOOSURF, LLC,

        Plaintiff – Appellant,

    v.

T-MOBILE USA, INCORPORATED; TDI ACQUISITION SUB, LLC,

        Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, Senior District Judge. (1:24-cv-01047-RDB)

Argued: January 28, 2026                       Decided: March 19, 2026

Before KING, AGEE, and HEYTENS, Circuit Judges.

Affirmed by published opinion. Judge Heytens wrote the opinion, which Judge King and Judge Agee joined.

**ARGUED:** John Chapman Petersen, CHAP PETERSEN & ASSOCIATES PLC, Fairfax, Virginia, for Appellant. Charles McCloud, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee. **ON BRIEF:** Patrick R. Corish, Federico J. Zablah, CHAP PETERSEN & ASSOCIATES, PLC, Fairfax, Virginia, for Appellant. Kenneth J. Brown, Teresa M. Wogoman, Dana B. Kinel, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellees.

TOBY HEYTENS, Circuit Judge:

When a telecommunications provider harms someone, the Federal Communications Act and state law can offer redress. But both the Act and general principles of federal litigation impose rules parties must follow and courts must enforce. For example, an injured party may sue for damages under the Act *or* file a complaint with the Federal Communications Commission (FCC), but it cannot do both. See 47 U.S.C. § 207. In addition, while the Act expressly preserves some state-law claims, see § 414, it expressly preempts others, see § 332(c)(3)(A). Finally, appellate courts may not—subject to rare exceptions—overturn a district court judgment based on arguments never presented to that court. See, *e.g.*, *Hicks v. Ferreyra*, 965 F.3d 302, 311 (4th Cir. 2020).

This case implicates all three rules. First, plaintiff Bloosurf, LLC's Communications Act claim is barred by that statute's election-of-remedies provision. Second, the Act expressly preempts Bloosurf's state-law tort claims premised on network interference. Third, the district court committed no reversible error in dismissing Bloosurf's one non-preempted state-law claim because Bloosurf forfeited the only argument it now makes on appeal. We thus affirm the dismissal of Bloosurf's complaint.

I.

Bloosurf provides internet and phone services on the Delmarva Peninsula—a 180-mile-long strip of land that contains parts of Delaware, Maryland, and Virginia. After customers complained about slow and unreliable service, Bloosurf investigated and discovered "mysterious" and "persistent" signal interference throughout its network.

2

JA 630.

Bloosurf claims defendant T-Mobile USA, Inc. and one of its subsidiaries (collectively, T-Mobile) caused that interference in three ways. First, T-Mobile "transmitt[ed] outside of its allotted frequency band" and T-Mobile's "excessive bandwidth bled over into Bloosurf's frequency range and disrupted its coverage." JA 633 ¶ 64. Second, T-Mobile's transmissions were too "loud," which interfered with Bloosurf's broadcasts. *Id.* And third, T-Mobile began transmitting 5G signals on infrastructure that impeded Bloosurf's 4G transmissions. All this, the complaint alleges, was T-Mobile's "attempt[] to eliminate Bloosurf as a rival" and secure "a wider hold on the region's spectrum." JA 638 ¶ 104.

The complaint asserts that T-Mobile did not stop at network interference but also disrupted some of Bloosurf's most important relationships. Bloosurf does not have FCC licenses to use the radio frequencies on which it broadcasts; instead, Bloosurf leases those frequencies from three FCC-licensee universities. With Bloosurf hobbled by ongoing network interference, T-Mobile began negotiating with the universities to buy their FCC licenses. Even though the sales never materialized, the complaint alleges the universities violated their lease terms and "ceased all interest in continuing their relationship with Bloosurf" because of T-Mobile's meddling. JA 641 ¶ 121.

After unsuccessfully trying to resolve the network interference issue, Bloosurf filed an informal complaint asking the FCC to intervene. The FCC dismissed the complaint. See *T-Mobile License LLC, Application for 2.5 Ghz Band Licenses, Auction No. 108*, 39 FCC Rcd. 1398, 1404 n.54 (2024). Bloosurf sought reconsideration, requesting—

3

among other forms of relief—that the agency "require T-Mobile to pay all costs . . . to implement an interference solution, including any costs required to upgrade Bloosurf's network." JA 535.[1] As far as we know, that request remains pending.

With FCC proceedings still underway, Bloosurf sued T-Mobile in federal district court. Count 1 asserts that T-Mobile violated the Communications Act by interfering with Bloosurf's network. Counts 3 through 6 claim that same interference also violated Maryland law. Finally, Count 2 alleges that T-Mobile tortiously interfered with Bloosurf's business relationship with the universities, again in violation of Maryland law.

The district court granted T-Mobile's motion to dismiss the complaint. We review that decision de novo, "accepting the complaint's factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *In re Marriott Int'l, Inc.*, 31 F.4th 898, 901 (4th Cir. 2022).

## II.

We start, as we must, with jurisdiction. See, *e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). As it did before the district court, T-Mobile asserts the court lacked "subject matter jurisdiction" to hear Bloosurf's network interference claims (Counts 1 and 3–6) because the FCC has "exclusive jurisdiction" over such matters.

---

[1] The complaint conspicuously fails to mention Bloosurf's initial FCC complaint or its request for reconsideration. But we conclude—and Bloosurf does not dispute—that we may consider and take judicial notice of both because the contents of the FCC complaint and reconsideration request "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2); accord *North Carolina Ins. Guar. Ass'n v. Becerra*, 55 F.4th 428, 435 n.6 (4th Cir. 2022).

4

Although we agree Bloosurf's network interference claims fail as a matter of law, see *infra* Parts III–IV, we underscore that none of T-Mobile's arguments has anything to do with a federal court's subject matter jurisdiction.

Although "[j]urisdiction" is a word of "many, too many, meanings," *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004) (quotation marks removed), both the Supreme Court and this one have worked in recent years to bring greater discipline to labeling issues "jurisdictional," see, *e.g.*, *Wilkins v. United States*, 598 U.S. 152, 159–60 (2023). Properly understood, subject matter jurisdiction refers to a court's "authority to adjudicate the cause," *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007), rather than whether a plaintiff has a valid cause of action or a defendant has a meritorious defense. See, *e.g.*, *Bell v. Hood*, 327 U.S. 678, 682 (1946) (holding that a federal district court had subject matter jurisdiction to hear plaintiffs' claims for damages under the Fourth and Fifth Amendments decades before the Court recognized such a cause of action).

As relevant here, Congress has given federal district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331, as well as "all civil actions where the matter in controversy exceeds the sum or value of $75,000, . . . and is between . . . citizens of different States," § 1332(a). Bloosurf's Communications Act claim arises under federal law. See, *e.g.*, *Louisville & Nash. R.R. Co. v. Mottley*, 211 U.S. 149, 152–53 (1908) (discussing the well-pleaded complaint rule). In addition, the complaint seeks far more than $75,000, and Bloosurf shares no citizenship with any defendant. For that reason—and even without getting into supplemental jurisdiction, see 28 U.S.C. § 1367—it appears the district court had subject matter

5

jurisdiction over Bloosurf's claims.

True, lower federal courts have only the jurisdiction Congress has given them, and what Congress has given, it also may take away. See U.S. Const. art. III, § 1; *Patchak v. Zinke*, 583 U.S. 244, 252 (2018); cf. 9 U.S.C. § 4 (restricting a federal district court's authority to entertain a petition to compel arbitration under the Federal Arbitration Act); 28 U.S.C. § 1445 (forbidding removal of certain suits from state to federal court that otherwise would be removable). But T-Mobile cites no provision of the Communications Act that strips Article III courts of authority to adjudicate network interference claims, nor does it identify any case saying Congress has done so. To the contrary, as we will explain below, see *infra* Part III, Congress has expressly *authorized* plaintiffs to bring Communications Act lawsuits in federal court in at least some circumstances. See 47 U.S.C. § 207.

Instead, T-Mobile points to a line of cases addressing a different question: whether (and if so, when) States and state agencies have the power to regulate network interference given the FCC's predominant role in that area. But all the federal court decisions T-Mobile cites are Article VI preemption cases, not Article III jurisdiction ones. And T-Mobile errs in suggesting that this Court "has not affirmatively addressed whether a dismissal on preemption grounds is based on a lack of subject matter jurisdiction or failure to state a claim." T-Mobile Br. 38 n.6 (quotation marks removed). To the contrary, this Court has long held that the sort of "ordinary preemption" at issue here is *not* a "jurisdictional doctrine" because it "simply declares the primacy of federal law, regardless of the forum." *Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005) (quotation marks removed); see *Johnson*

6

*v. American Towers, LLC*, 781 F.3d 693, 701–03 (4th Cir. 2015) (so holding about preemption claims based on the Communications Act). We thus reject T-Mobile's assertion that the district court lacked subject matter jurisdiction over Bloosurf's network interference claims.

III.

The district court correctly dismissed Count 1, which asserts that T-Mobile violated 47 U.S.C. § 333. In the district court's view, that claim failed because Bloosurf lacks a private right of action to enforce that provision. We need not—and thus do not—reach that question. Instead, we affirm the district court's dismissal of Count 1 because the Communications Act's election-of-remedies provision bars any otherwise-valid claim.

Under the Act, "[a]ny person" who claims to have been injured "by any common carrier" that is "subject to the provisions of" Chapter 5 of that Act (of which Section 333 is a part) has an important choice to make. 47 U.S.C. § 207. Option #1: "make [a] complaint to the" FCC as described in the Act's other provisions. *Id.* Option #2: "bring [a] suit for the recovery of the damages for which such common carrier may be liable under the [Act], in any district court of the United States of competent jurisdiction." *Id.* But the same provision that offers that choice makes clear—both through its use of the words "may either" and in its final clause—that an injured party "*shall not* have the right to pursue both such remedies." *Id.* (emphasis added). So "once an election is made by either filing a complaint with the FCC or filing a complaint in federal court, a party may not thereafter file a complaint on the same issues in the alternative forum, regardless of the status of the complaint." *Premiere Network Servs., Inc. v. SBC Commc'ns, Inc.*, 440 F.3d 683, 688

7

(5th Cir. 2006).

Yet that is what Bloosurf tried to do here. In November 2022—nearly a year and a half before filing this lawsuit—Bloosurf asked the FCC to "investigate" T-Mobile's conduct and "require" T-Mobile to do certain things. JA 261–62. At least three of our sister circuits have held this sort of 'informal' complaint triggers Section 207's election-of-remedies provision,[2] and Bloosurf does not contend otherwise. And, just like Count 1 of Bloosurf's current complaint, Bloosurf's FCC complaint asserted that T-Mobile harmed Bloosurf by: (a) broadcasting outside its bandwidth; (b) broadcasting too loudly; and (c) deploying 5G technology that interfered with Bloosurf's own transmissions. Compare JA 268–69, 272 (FCC complaint), with JA 31–34, 650–52 (district court complaint).

Bloosurf's response—that there is no election-of-remedies problem because it sought different remedies from the FCC and the district court—gets both the facts and the law wrong. As to the facts: Despite Bloosurf's attempts to claim otherwise, it asked *both* the FCC and the district court for damages. Compare JA 535 (asking the FCC to "require T-Mobile to pay all costs . . . to implement an interference solution, including any costs required to upgrade Bloosurf's network"), and JA 518 (similar), with JA 664 (seeking "compensatory damages" from the district court).

As to the law: Section 207 does not permit a party to bring parallel proceedings for

---

[2] See *Digitel, Inc. v. MCI Worldcom, Inc.*, 239 F.3d 187, 190 (2d Cir. 2001) (per curiam); *Stiles v. GTE Sw. Inc.*, 128 F.3d 904, 907 (5th Cir. 1997); *Mexiport, Inc. v. Frontier Commc'ns Servs., Inc.*, 253 F.3d 573, 575 (11th Cir. 2001) (per curiam).

8

the same violation simply because that party seeks different remedies from the FCC and a federal court. The statute says an injured party "may either make [a] complaint to the [FCC] as hereinafter provided for, or may bring [a] suit for the recovery of [the] damages." 47 U.S.C. § 207. The statutory text thus addresses the *forum* in which the dispute will be resolved, not the *remedy* the complaining party seeks. This straightforward reading is confirmed just two sections later by a provision that makes clear that the FCC proceedings referenced in Section 207 can result in a damages award. See § 209 (authorizing the FCC to make "an award of damages" to a complaining party); cf. *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012) ("[T]he first rule of . . . statutory interpretation is: Read on.").

Bloosurf cites no court of appeals decision adopting its atextual interpretation of Section 207, and we will not be the first.[3] Instead, we hold the district court correctly dismissed Count 1 because it seeks to litigate the "same issues" raised by an earlier-filed FCC complaint and is thus barred by Section 207. *Premiere Network Servs., Inc.*, 440 F.3d at 688.

## IV.

The district court correctly dismissed the state-law claims alleged in Counts 3–6

---

[3] We are unpersuaded by the two—decades-old and out-of-circuit—district court decisions cited in Bloosurf's reply brief because neither explains how their results are consistent with the statutory text. And contrary to Bloosurf's suggestion otherwise, the Second Circuit has specifically reserved this question rather than deciding it in Bloosurf's favor. See *Digitel, Inc.*, 239 F.3d at 191 ("[a]ssuming without deciding" that it matters whether "the FCC complainants have sought only equitable relief, in contrast to claims for money damages in federal court").

because they are preempted by the Communications Act.

Section 332(c)(3)(A) of the Act provides that—subject to one exception not triggered here—"no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service." Duties imposed by state tort law are a form of state regulation for Supremacy Clause purposes. See, *e.g.*, *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008). And although the statutory text is somewhat "unclear as to what precisely constitutes a barrier to entry," this Court has held that state laws—including common law tort duties—"regulate . . . entry" under Section 332(c)(3)(A) if they "obstruct or burden a wireless service provider's ability to provide a network of wireless service coverage." *Pinney v. Nokia, Inc.*, 402 F.3d 430, 456 (4th Cir. 2005); accord *Johnson v. American Towers, LLC*, 781 F.3d 693, 706 (4th Cir. 2015).

That standard resolves this case. Counts 3–6 all boil down to an assertion that T-Mobile should have acted differently in operating its transmissions. According to the complaint, Maryland law required T-Mobile to broadcast only on its own frequencies; transmit at a lower decibel; and transmit 5G signals differently (or not at all). Allowing state law to regulate T-Mobile's conduct in those ways would burden T-Mobile's provision of wireless service coverage—just like state-law-imposed duties to "actively monitor wireless networks and prevent" certain categories of calls from going through would have done in *Johnson*, 781 F.3d at 706. For that reason, Section 332 preempts Counts 3–6.

Bloosurf offers two primary counterarguments. Neither persuades us.

*First*, Bloosurf insists Counts 3–6 are saved by the Communications Act's general

10

saving clause, which reads: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. But the Supreme Court has held that provision "preserves *only* those [state-law] rights that are not inconsistent with" other provisions of the Communications Act. *American Tel. & Tel. Co. v. Central Off. Tel., Inc.*, 524 U.S. 214, 227 (1998) (emphasis added). And because the state-law tort duties Bloosurf invokes here would "have the effect of regulating . . . market entry" under this Court's precedent, such duties are "expressly preempted by § 332(c)(3)(A) and thus beyond the scope of § 414." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1011 (9th Cir. 2010).

*Second*, Bloosurf asserts that because federal law already requires T-Mobile to "stay in its lane" (that is, broadcast only on its own frequencies) state tort claims that merely require the same thing "supplement[]" rather than "conflict with" the Communications Act. Bloosurf Br. 27, 29. For starters, that sounds like a defense to conflict preemption rather than the sort of express preemption T-Mobile argues for here. See generally *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (discussing different flavors of preemption). But even assuming Bloosurf is right about how the relevant Maryland tort duties operate, Counts 3–6 still would be preempted. The Act does not merely oust States from regulating market entry in ways that are different from or inconsistent with federal law. Rather, it provides that "no State or local government shall have any authority to regulate" such matters *at all*. 47 U.S.C. § 332(c)(3)(A). For that reason, Section 332(c)(3)(A) does not permit Maryland to impose damages on T-Mobile for violating a state-law duty, even if another regulator (here, Congress or the FCC) already requires T-Mobile to do the same

11

thing.

V.

Finally, we affirm the district court's dismissal of Count 2, which asserts that T-Mobile tortiously interfered with Bloosurf's lease agreements with the universities in violation of Maryland law.

"Maryland recognizes the tort action for wrongful interference with contractual or business relationships in two general forms." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 268 (Md. 1994). The first is "inducing the breach of an existing contract," while the second is "maliciously or wrongfully interfering with economic relationships." *Id.* (quotation marks removed). The district court applied Maryland's well-established test for the latter (malicious or wrongful interference with an economic relationship) and dismissed Count 2 for failure to state a claim under that test.

On appeal, Bloosurf's only argument is that the district court used "the wrong test" and should instead have used the one that Maryland courts apply in situations involving breach of an existing contract. Bloosurf Br. 33. There is no indication the district court understood the "which test" question to be in dispute—and with good reason. Before the district court, Bloosurf did not *merely* fail to argue that the court should apply the test it now, on appeal, prefers. Instead, in both its amended complaint and district court briefing, Bloosurf urged the district court to use the very test Bloosurf now insists was the wrong one, and Bloosurf never modified or took back that suggestion before the district court.

That sort of whipsawing the district court is not allowed. At best, Bloosurf's late-breaking argument is forfeited, and this Court can reverse "only if the newly raised

12

argument establishes fundamental error or a denial of fundamental justice." *Hicks*, 965 F.3d at 310 (quotation marks removed).[4] Bloosurf makes no attempt to show that high bar is met here, which means any argument against forfeiture is forfeited too. See *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).[5] Because Bloosurf's only argument that the district court erred by dismissing Count 2 is thus doubly forfeited, we affirm that decision as well.

*     *     *

The judgment is

*AFFIRMED*.

---

[4] One could argue Bloosurf's current argument is not just forfeited but waived because Bloosurf invited any error. See *Bermeo v. Andis*, 163 F.4th 87, 94 n.8 (4th Cir. 2025) ("Under the invited error doctrine, a court can not be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request." (quotation marks removed)); see also *Sullivan v. Commonwealth*, 161 S.E. 297, 300 (Va. 1931) (stating an appellant may not "approbate and reprobate—invite error and then take advantage of his own wrong"). But T-Mobile's brief framed the question as one of forfeiture, so we do the same.

[5] Bloosurf's belated assertion that it "can easily establish plain error," Bloosurf Reply Br. 24, is not well taken. The plain-error standard comes from Federal Rule of Criminal Procedure 52(b), see *United States v. Olano*, 507 U.S. 725, 727 (1993), which does not apply in civil cases. Our cases are clear: A civil litigant may not obtain relief on a forfeited claim absent "fundamental error or a denial of fundamental justice," which is an even "more limited" standard "than the plain error standard that we apply in criminal cases." *In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014) (quotation marks removed).

13